[No. H020690. Sixth Dist. May 3, 2000.]

JIM CRAIK et al., Plaintiffs and Appellants, v.
COUNTY OF SANTA CRUZ et al., Defendants and Respondents;
NORMA P. ODENWELLER et al., Real Parties in Interest and
Respondents.

COUNSEL

Douglas E. Marshall; McCutchen, Doyle, Brown & Enersen, Geoffrey, L. Robinson and Marie A. Cooper for Plaintiffs and Appellants.

Dwight L. Herr, County Counsel, and Rahn Garcia, Assistant County Counsel, for Defendant and Respondent County of Santa Cruz.

Bill Lockyer, Attorney General, Richard M. Frank, Chief Assistant Attorney General, J. Matthew Rodriguez, Assistant Attorney General, and Joseph C. Rusconi, Deputy Attorney General, for Defendant and Respondent California Coastal Commission.

Bosso, Williams, Sachs, Atack & Gallagher, John M. Gallagher and Peter L. Sanford for Real Parties in Interest and Respondents.

OPINION

**PREMO, Acting P. J.**—Plaintiffs Jim Craik and Judi Craik appeal from an adverse judgment on their petition for writ of mandate. The petition challenged the approval of several variances and related building permits by defendant County of Santa Cruz. Real parties in interest Norma P. Odenweller and Robert W. Fleck, plaintiffs' next-door neighbors, had sought the

variances for the construction of a residence. Plaintiffs contend that defendant abused its discretion in certain respects. We disagree and affirm the judgment.[1]

## LEGAL BACKGROUND AND SCOPE OF REVIEW

"A comprehensive zoning plan could affect owners of some parcels unfairly if no means were provided to permit flexibility. Accordingly, in an effort to achieve substantial parity and perhaps also in order to insulate zoning schemes from constitutional attack, our Legislature laid a foundation for the granting of variances. Enacted in 1965, section 65906 of the Government Code establishes criteria for these grants; it provides: 'Variances from the terms of the zoning ordinance shall be granted only when, because of special circumstances applicable to the property, including size, shape, topography, location or surroundings, the strict application of the zoning ordinance deprives such property of privileges enjoyed by other property in the vicinity and under identical zoning classification. [¶] Any variance granted shall be subject to such conditions as will assure that the adjustment thereby authorized shall not constitute a grant of special privileges inconsistent with the limitations upon other properties in the vicinity and zone in which such property is situated.' [¶] Applicable to all zoning jurisdictions except chartered cities [citation], section 65906 may be supplemented by harmonious local legislation." (*Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506, 511 [113 Cal.Rptr. 836, 522 P.2d 12], fns. omitted.)

We note that defendant has enacted a harmonious ordinance. Santa Cruz County Code section 13.10.230(c) requires three findings before a variance may be granted: "1. That because of special circumstances applicable to the property, including size, shape, topography, location, and surrounding existing structures, the strict application of the Zoning Ordinance deprives such property of privileges enjoyed by other property in the vicinity and under identical zoning classification. [¶] 2. That the granting of such variance will be in harmony with the general intent and purpose of zoning objectives and

---

[1]Plaintiffs' petition also challenged certain findings made by defendant California Coastal Commission in a decision that declined to hear an appeal of defendant county's action. According to plaintiffs, they brought the appeal to ensure that they exhausted all administrative remedies and do not quarrel with defendant commission's discretionary decision against hearing the appeal; but they fear that, if they prevail against defendant county, the victory will be hollow because the findings made by defendant commission will have a res judicata effect. Since plaintiffs are not prevailing against defendant county, the contingency plaintiffs anticipated will not occur. We therefore do not address the arguments concerning defendant commission, which include at the threshold whether there (1) is a justiciable controversy given that plaintiffs challenge findings but not a decision, and (2) can be a res judicata effect of "findings" without a final decision on the merits.

will not be materially detrimental to public health, safety or welfare or injurious to property of improvements in the vicinity. [¶] 3. That the granting of such variance shall not constitute a grant of special privileges inconsistent with the limitations upon other properties in the vicinity and zone in which such is situated."

A local government's grant of a variance is a quasi-judicial act subject to judicial review under Code of Civil Procedure section 1094.5. (*Topanga Assn. for a Scenic Community v. County of Los Angeles, supra*, 11 Cal.3d at p. 514.) "Section 1094.5 clearly contemplates that at minimum, the reviewing court must determine both whether substantial evidence supports the administrative agency's findings and whether the findings support the agency's decision. Subdivision (b) of section 1094.5 prescribes that when petitioned for a writ of mandamus, a court's inquiry should extend, among other issues, to whether 'there was any prejudicial abuse of discretion.' Subdivision (b) then defines 'abuse of discretion' to include instances in which the administrative order or decision 'is not supported by the findings, *or* the findings are not supported by the evidence.' (Italics added.) Subdivision (c) declares that '*in all . . . cases*" (italics added) other than those in which the reviewing court is authorized by law to judge the evidence independently, 'abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record.' [Citation.]" (*Id.* at pp. 514-515, original italics, fn. omitted.)

In determining whether the findings are supported, "[w]e may not isolate only the evidence which supports the administrative finding and disregard other relevant evidence in the record. [Citations.] On the other hand, neither we nor the trial court may disregard or overturn the . . . finding ' "for the reason that it is considered that a contrary finding would have been equally or more reasonable." ' [Citations.]" (*Northern Inyo Hosp. v. Fair Emp. Practice Com.* (1974) 38 Cal.App.3d 14, 24 [112 Cal.Rptr. 872].)

In determining whether the decision is supported, we require the findings to "bridge the analytic gap between the raw evidence and ultimate decision or order." (*Topanga Assn. for a Scenic Community v. County of Los Angeles, supra*, 11 Cal.3d at p. 515.) The findings need not be stated with the precision required in judicial proceedings. (*Id.* at p. 517, fn. 16.) They may properly incorporate matters by reference and even omissions may sometimes be filled by such relevant references as are available in the record. (*McMillan v. American Gen. Fin. Corp.* (1976) 60 Cal.App.3d 175, 183-184 [131 Cal.Rptr. 462].) "Thus, where reference to the administrative record informs the parties and reviewing courts of the theory upon which an agency

has arrived at its ultimate finding and decision it has long been recognized that the decision should be upheld if the agency 'in truth found those facts which as a matter of law are essential to sustain its . . . [decision].' [Citations.]" (*Id.* at p. 184.)

"In making these determinations, the reviewing court must resolve reasonable doubts in favor of the administrative findings and decision." (*Topanga Assn. for a Scenic Community v. County of Los Angeles, supra*, 11 Cal.3d at p. 514.)

*Topanga* makes clear, however, "that despite the applicability of the substantial evidence rule and the deference due to the administrative findings and decision, judicial review of zoning variances must not be perfunctory or mechanically superficial." (*Orinda Assn. v. Board of Supervisors* (1986) 182 Cal.App.3d 1145, 1161 [227 Cal.Rptr. 688].)

"Whereas the adoption of zoning regulations is a legislative function [citation], the granting of variances is a quasi-judicial, administrative one. [Citations.] If the judiciary were to review grants of variances superficially, administrative boards could subvert this intended decision-making structure. [Citation.] They could '[amend] . . . the zoning code in the guise of a variance' [citation], and render meaningless, applicable state and local legislation prescribing variance requirements. [¶] Moreover, courts must meaningfully review grants of variances in order to protect the interests of those who hold rights in property nearby the parcel for which a variance is sought. A zoning scheme, after all, is similar in some respects to a contract; each party foregoes rights to use its land as it wishes in return for the assurance that the use of neighboring property will be similarly restricted, the rationale being that such mutual restriction can enhance total community welfare. [Citations.] If the interest of these parties in preventing unjustified variance awards for neighboring land is not sufficiently protected, the consequence will be subversion of the critical reciprocity upon which zoning regulation rests." (*Topanga Assn. for a Scenic Community v. County of Los Angeles, supra*, 11 Cal.3d at pp. 517-518.)

We apply the above principles in the same manner as the trial court. (*Orinda Assn. v. Board of Supervisors, supra,* 182 Cal.App.3d 1145, 1161.) Though the trial court's conclusions and disposition do not factor into our analysis, we acknowledge and appreciate the assistance of the trial court given via its detailed tentative decision.

FACTUAL BACKGROUND

Beach Drive in Aptos is immediately adjacent to Rio Del Mar Beach. Defendant's 1994 general plan regulates this area since it falls within

defendant's "Urban Services Line." Relevant to the instant issues, the general plan generally prohibits three-story homes. The 400 block of Beach Drive is zoned R-1-8 (residential, 8,000-square-foot lots); the rest of Beach Drive (and some inland areas) is zoned R-1-6 (residential, 6,000-square-foot lots) or RB (residential beach). Zoning restrictions on Beach Drive generally include height limits, floor-area ratio, and lot line setbacks. Beach Drive is also within a wave-runup hazard zone for purposes of restrictions imposed by the Federal Emergency Management Agency (FEMA). FEMA generally prohibits livable space on ground level. This prohibition specifically amounts to a requirement that the lowest habitable level of a residence on Beach Drive must be 22 or 23 feet above mean sea level.

Most of Beach Drive is built out with residences of the same general size and design. Most of the residences were developed before the existing general plan, zoning ordinance, and FEMA regulations became effective. And most do not comply with current lot line setbacks. Some have been allowed variances for setbacks, height limits, and floor-area ratios. Nineteen of 61 homes are three stories.

In 1996, one family owned 415 and 413 Beach Drive. A residence was on 415, and a garage and parking area were on 413. In late 1996, plaintiffs purchased 415 and real parties in interest purchased 413. Soon thereafter, real parties submitted building plans to defendant. Defendant's zoning administrator approved the plans over plaintiffs' objections. Plaintiffs unsuccessfully appealed the decision to defendant's planning commission. Plaintiffs then appealed the commission's decision to defendant's board of supervisors. The board declined to hear the matter, but remanded to the commission to reconsider a variance pertaining to floor-area ratio. The commission reconsidered and approved the variance. Plaintiffs then appealed the decision to the board of supervisors. The board declined to hear the matter. Plaintiffs then instituted this action and the Coastal Commission proceeding.[2]

Defendant granted real parties interest six variances:

1. A variance to exceed the two-story limit, allowing three stories.

2. A variance to exceed a 28-foot height limit, allowing 32 feet.

3. A variance to reduce a 20-foot front yard setback, allowing 16 feet (and 8 feet for a second story deck).

4. A variance to exceed a 50 percent floor-area ratio, allowing 53 percent house-to-lot coverage.

---

[2]Plaintiffs later amended their petition to add the Coastal Commission as a defendant.

5.  A variance to allow a second story deck.

6.  A variance to exceed a 50 percent limit on front yard space to be used for parking.

Defendant's findings were as follows:

"1.  THAT BECAUSE OF SPECIAL CIRCUMSTANCES APPLICABLE TO THE PROPERTY, INCLUDING SIZE, SHAPE, TOPOGRAPHY, LOCATION, OR EXISTING SURROUNDING STRUCTURES, THE STRICT APPLICATION OF THE ZONING ORDINANCE DEPRIVES SUCH PROPERTY OF PRIVILEGES ENJOYED BY OTHER PROPERTY IN THE VICINITY AND UNDER IDENTICAL ZONING CLASSIFICATION.

"Special circumstances applicable to this property to justify the granting of a variance to development regulations concerning the height, number of stories, parking on more than 50 percent of the front setback, a reduced front setback and an increased floor area ratio, include the shape of the parcel, the size of useable area on the parcel, the lack of developable area on the parcel, the topography of the parcel, the location of the parcel, and the size and configuration of other houses in the vicinity. A narrow 35 foot property width provides limited area for development as required 5 foot side setbacks leave a 25 foot wide building envelope.

"The project site is further constrained by existing topography. It is located below an eroding coastal bluff to the rear of the lot, and in a coastal wave run-up and/or flooding zone which requires elevation of any structure above 23 feet mean sea level at the front of the lot. The proposed structure would exceed the 28 foot height limit by four feet, exceed the two story height limit and exceed the 50 percent floor area ratio by about 3 percent, so that the first level would provide the necessary flood elevation required by the geologic report completed for the property and by General Plan policies 6.4.2 and 6.4.3, and by FEMA which regulate development in flood hazard areas. Without counting the non-habitable FEMA floor, the house would meet the floor area ratio requirement of 50 percent. Since this non-habitable floor has to be counted towards floor area ratio due to the County's definition of under floor area having to do with ceiling height, the floor area ratio variance is necessary.

"Due to the steep coastal bluff at the rear of the property, proposed to be retained by a 12 foot high engineered wall to deflect potential slides, the entire back yard is unsuitable for a deck/patio or recreational area, as this area is reserved for storage of landslide debris in the event of a slope failure

above the site which would flow into the rear yard. Such a landslide could occur at any time due to seismic events as well as storm events. This rear yard is therefore unsuitable for a deck/patio or recreational area, and makes the deck areas at the front of the structure important as the only useable outdoor area available to the parcel. The house is situated as far forward on the lot as possible due to the amount of debris flow catchment area required. This creates the necessity for the front yard variance for the proposed encroachment into the 20 foot front setback of four feet for the house (a 16 foot distance from the house to the front property line). The proposed deck encroachment to within eight feet of the front property line provides needed open space area for the single-family dwelling.

"The vast majority of existing surrounding structures enjoy reduced front and/or side setbacks and the strict application of the zoning ordinance would prevent this property owner from utilizing this site to the same extent as other properties in the vicinity under identical R-1-8 zoning. The majority of properties in the vicinity were developed more than 50 years ago, predating both the zoning ordinance and FEMA regulations.

"Required on-site parking takes up more than 50 percent of the 35 foot wide front yard, but provides a total of three spaces on-site so that this property does not compete with coastal visitors for access to public on-street parking on Beach Drive. The proposed deck encroachment to within 8 feet of the front property line and 16 feet to the residence, provides needed open space area for the single-family dwelling.

"2. THAT THE GRANTING OF THE VARIANCE WILL BE IN HARMONY WITH THE GENERAL INTENT AND PURPOSE OF ZONING OBJECTIVES AND WILL NOT BE MATERIALLY DETRIMENTAL TO PUBLIC HEALTH, SAFETY, OR WELFARE OR INJURIOUS TO PROPERTY OR IMPROVEMENTS IN THE VICINITY.

"Compliance with mitigation measures required by technical studies accepted by the Planning Department [reference] will insure that the granting of a variance to construct the proposed single-family dwelling shall not be materially detrimental to the public health, safety or welfare or be injurious to property or improvements in the vicinity. The residence is required to be elevated above 23 feet mean sea level with no habitable features on the ground floor and constructed with breakaway walls and a collapsible garage door. No mechanical, electrical or plumbing equipment shall be installed below the base flood elevation. An engineered 12 foot high retaining wall is to be constructed behind the house to stabilize the base of the coastal bluff above the residence. The rear yard is to be free of obstructions so that there is nothing substantial to deflect slide debris onto adjacent properties.

"3. THAT THE GRANTING OF SUCH VARIANCES SHALL NOT CONSTITUTE A GRANT OF SPECIAL PRIVILEGES INCONSISTENT WITH THE LIMITATIONS UPON OTHER PROPERTIES IN THE VICINITY AND ZONE IN WHICH SUCH IS SITUATED.

"The granting of a variance to reduce the front setback from the required 20 feet to about 16 feet to the dwelling and about 8 feet to the edge of the cantilevered second floor deck; to increase the maximum height from 28 feet to about 32 feet; to allow three stories; to allow parking to exceed a maximum of 50 percent of the required front yard, <u>and to allow an increase in the floor area ratio from 50 percent to about 53 percent</u> will not constitute a grant of special privilege to this parcel as similar variances have been granted in the <u>R-1-8</u> zone district and immediate vicinity. The variance would provide a remedy for the proposed infill development of a singe-family residence consistent with the existing surrounding development.

"The County has considered and approved similar variance requests with existing surrounding development. Reduced setbacks have been granted at APN's 043-105-03, -06, and -22 for example, under Applications #97-0387 (reduced side setback from 5 feet to 3 feet), #86-45-V (reduced 5 feet setbacks to 3 feet and zero feet), and #4780 (reduced front setback from 10 feet to 5 feet). A permit for a fence greater than 6 feet in the required side yard was also granted at APN 043-105-15 under Application #91-0608.

"A field survey and aerial photographs indicate that the majority of existing homes along Beach Drive have a front setback of ten feet or less, so that the proposed project being set back 16 feet to the proposed residence and 8 feet to the second level deck, would not constitute a grant of special privilege inconsistent with existing surrounding development. <u>A field survey has shown that there are at least 19 other three-story homes on Beach Drive, so granting the variance is consistent with the privileges already enjoyed by surrounding development.</u>" (Underscoring in Original.)

### DISCUSSION

■ Plaintiffs generally explain their abuse-of-discretion argument as follows: "The fundamental problem with the County's actions is its failure to act according to a development plan. State Planning and Zoning laws require the County to plan for anticipated development, and then to implement that plan with each and every project approval. They preclude the County from making ad hoc decisions, on a parcel-by-parcel basis, regarding appropriate development. [¶] . . . [¶] The County's violation of this fundamental premise of the State Planning and Zoning laws took two forms: the County approved

variances from its Zoning Code when no justification for a variance was present, and it adopted a new exception to its General Plan when the Plan contains no such exception."

Plaintiffs specifically argue that variances can only be granted in the presence of "physical" disparities between the subject property and other properties in the zone. They urge that the record contains no evidence of any physical disparity. They continue that 413 Beach Drive is a narrow, 35-foot-wide lot, backing up against an eroding coastal bluff. They point out that these characteristics are common to all of the lots in the R-1-8 zone of the 400 block of Beach Drive. They urge that defendant's reliance on the FEMA and related county regulations is erroneous because, since all built-out properties are subject to the regulations upon a remodel or reconstruction, the regulations constitute a reason to rezone rather than a physical disparity justifying a variance. We disagree with this analysis.

First, there is no authority to support that a "physical" disparity is a precondition for a variance. Government Code section 65906 requires variances to be granted "because of *special* circumstances applicable to the property." (Italics added.) The Santa Cruz County Code adopts the same concept (special circumstances). And the leading case in this area interprets the concept as emphasizing only undefined "*disparities* between properties." (*Topanga Assn. for a Scenic Community v. County of Los Angeles, supra,* 11 Cal.3d at p. 520, italics in original.) Thus, defendant was not barred from considering the FEMA and related county regulations as special circumstances.

And second, though the FEMA and related county regulations may abstractly apply to everyone (contraindicating a disparity), in reality, the regulations only impact the land of real parties and a few other vacant parcels. Thus, defendant could reasonably accept that there is a disparity between properties. That the abstract impact of the regulations suggests a need to rezone does not negate that the practical impact is limited and could be considered disparate. The point here is that plaintiffs define disparity in one way and defendant defines disparity in another way. Neither construction is unreasonable. We therefore defer to defendant's construction. (*Anderson v. San Francisco Rent Stabilization & Arbitration Bd.* (1987) 192 Cal.App.3d 1336, 1343 [237 Cal.Rptr. 894].)

Plaintiffs next specifically argue that one of the variances is inconsistent with the general plan to the extent that it allows a three-story home.

Defendant's general plan states: "Residential structures shall be limited to two stories in urban areas and on parcels smaller than one acre in the rural

areas except where explicitly stated in the Residential Site and Development Standards ordinance [RSDSO]."

The RSDSO states, in part: "Outside the Urban Services Line, the number of stories in a residential structure shall not be limited by the provisions of Section 13.10.323(b) [generally reaffirming the general plan's two-story limit]." (Santa Cruz County Code, § 13.10.323(e)4.)

Plaintiffs claim that the only explicit exception to the two-story limit in the RSDSO is for residential structures outside the Urban Services Line. Since real parties in interest's property is inside the Urban Services Line, plaintiffs reason that the variance allowing three stories is inconsistent with the general plan.

Again, plaintiffs argue for an interpretation of this statutory interplay in favor of their point of view and refuse to accept that defendant adopted a reasonable, contrary interpretation.

The RSDSO also states: "The [maximum-number-of-stories] standards shall apply within all residential 'R' zone districts, except as noted elsewhere in this Section and uses inconsistent therewith shall be prohibited absent a variance approval." (Santa Cruz County Code, § 13.10.323(b).)

Thus, the RSDSO can be construed as explicitly stating that the standards governing the maximum number of stories can be modified by a variance. Though plaintiffs characterize the variance-approval exception as generic rather than explicit, the argument simply constitutes a point of view. Another equally reasonable point of view is that the variance-approval exception is the specific exception to the general plan while the outside-Urban-Services-Line "exception" is, more accurately, an exemption from the burden of having to apply for a variance. Again, we defer to defendant's construction of its own ordinance. (*Anderson v. San Francisco Rent Stabilization & Arbitration Bd., supra*, 192 Cal.App.3d at p. 1343.)

Plaintiffs finally argue that defendant's findings do not support the decision in the sense that the analytic path between the evidence and conclusions cannot be traced. They complain that the findings are scattered throughout the record, the number and character of the variances are uncertain, and there exists no explanation why the setbacks are so large, all the stories have a reduced setback, the third story deck was needed, and 32 feet rather than 28 or 29 feet was needed. There is no merit to these claims.

We reiterate that findings need not be stated with judicial formality. Findings must simply expose the mode of analysis, not expose every minutia. (*Topanga Assn. for a Scenic Community v. County of Los Angeles, supra*,

11 Cal.3d at p. 517, fn. 16.) Here, we have identified six clearly defined variances. And we have no trouble following defendant's analysis. The property in question is small and the backyard is unusable. Hence, the need for a forward-set building site and decks. The proposed structure cannot be occupied in the first 23 vertical feet. Hence, the need for four additional feet and an extra story.

## DISPOSITION

The judgment is affirmed.

Bamattre-Manoukian, J., and Wunderlich, J., concurred.