[No. B226663. Second Dist., Div. Four. Aug. 16, 2011.]

WEST CHANDLER BOULEVARD NEIGHBORHOOD ASSOCIATION et al., Plaintiffs and Appellants, v.
CITY OF LOS ANGELES et al., Defendants and Respondents.

[No. B229418. Second Dist., Div. Four. Aug. 16, 2011.]

WEST CHANDLER BOULEVARD NEIGHBORHOOD ASSOCIATION et al., Plaintiffs and Respondents, v.
CITY OF LOS ANGELES, Defendant and Respondent;
CHABAD OF THE VALLEY, INC., et al., Real Parties in Interest and Appellants.

COUNSEL

Law Offices of Noel Weiss, Noel W. Weiss; and Mark S. Shipow for Plaintiffs and Appellants and for Plaintiffs and Respondents.

Carmen A. Trutanich, City Attorney, Timothy McWilliams and Tayo A. Popoola, Deputy City Attorneys, for Defendant and Respondent City of Los Angeles.

Jeffer Mangels Butler & Mitchell and Benjamin M. Reznik for Defendants and Respondents Chabad of the Valley, Inc., and Chabad of North Hollywood and for Real Parties in Interest and Appellants.

OPINION

WILLHITE, J.—West Chandler Boulevard Neighborhood Association, Mitchell Ramin, and Jeff Gantman (collectively appellants) petitioned for a writ of administrative mandamus pursuant to Code of Civil Procedure section 1094.5,[1] seeking to overturn a decision by the City of Los Angeles (City) to grant a conditional use permit (CUP) and parking variance to real parties in interest Chabad of the Valley, Inc., and Chabad of North Hollywood (collectively Chabad). The superior court denied appellants' petition for a writ and denied Chabad's motion under section 1021.5 for attorney fees. In these appeals, consolidated for purposes of oral argument and decision, appellants challenge the denial of the writ, and Chabad challenges the denial of their motion for attorney fees. We conclude the city council did not comply with the relevant provisions of the Los Angeles City Charter (L.A. Charter) and the Los Angeles Municipal Code (LAMC or Municipal Code) and with the requirements of *Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506 [113 Cal.Rptr. 836, 522 P.2d 12] (*Topanga*). We therefore reverse the denial of the writ and dismiss the appeal regarding attorney fees as moot.

## FACTUAL AND PROCEDURAL BACKGROUND

Chabad has operated a synagogue since 1981 in a 1,500-square-foot one-story building, located at 13079 West Chandler Boulevard, in an R-1 zoned residential community. The property is triangular, bounded by three streets, and is approximately 9,568 square feet in area.

In 1981, the City granted Chabad a CUP and parking variance, allowing it to use the property to operate a Jewish synagogue with a congregation of

---

[1] Any undesignated statutory references are to the Code of Civil Procedure.

approximately 45 people and to maintain only seven parking spaces instead of the 20 spaces that would have been required based on the size of the assembly space. By 2007, the congregation had grown to about 200 people.

In March 2007, Chabad applied to the City for permission to demolish the one-story building and build a 16,100-square-foot three-story building. Chabad sought a variance to allow a building height of 45 feet instead of 36 feet and a parking variance to allow five parking spaces instead of the requisite 83 spaces.

In August 2007, the City filed a notice of intent to adopt a mitigated negative declaration as to Chabad's project, pursuant to the requirements of the California Environmental Quality Act (CEQA). (Pub. Resources Code, § 21092; Cal. Code Regs., tit. 14, § 15072.) The City found that the environmental impact of the project, including aspects such as parking, landscaping, tree removal, and street improvements, would be mitigated to a level of insignificance.

A public hearing was held on February 4, 2008, to consider the application. Members of the synagogue testified that the current space was too small and that many of them walked to services, so parking would not be an issue. Opponents to the application testified about concerns regarding parking, the height of the proposed building, the length of the proposed hours of usage (7:00 a.m. to 11:00 p.m.), and other impacts on the residential neighborhood.

On November 25, 2008, the City zoning administrator approved aspects of Chabad's proposal, under numerous terms and conditions. As pertinent here, the zoning administrator approved a CUP for Chabad to build a religious facility in the R-1 zone, but she limited the facility to 10,300 square feet and required a minimum of 40 percent of the square footage to be at basement level. She denied a variance to permit a building height of 37 feet rather than 33 feet, or 28 feet for a roof with a slope less than 25 percent. She limited the assembly space to 2,400 square feet and so approved a parking variance to provide five parking spaces instead of the 68 required for an assembly space of that size. Chabad had proposed an assembly space of 3,654 square feet, which would have required 104 parking spaces. The zoning administrator imposed numerous other conditions, such as limiting the hours of operation to 7:00 a.m. to 10:00 p.m.

Appellants appealed to the South Valley Area Planning Commission (Planning Commission), raising concerns such as the size of the building, the exacerbation of already existing problems with traffic, noise, and parking, and the inconsistency of the proposed building with the residential neighborhood. Chabad also appealed, asking for permission to build a building totaling

18,049 square feet, with hours of operation from 6:30 a.m. to 11:00 p.m., and seeking other modifications to the project.

The Planning Commission held a hearing on February 12, 2009, at which it granted appellants' appeal and denied Chabad's appeal. At the hearing, the commissioners expressed concern with parking and with the size of the building relative to the lot. The Planning Commission found that the project was much too large for the size of the lot, would be materially detrimental to the character of the neighborhood, and would not be in harmony with the City's general plan. It further found that there was insufficient parking for the facility, despite the religious ban on driving on certain days, noting that there would be numerous events with high attendance and no driving restrictions. The Planning Commission found that the parking variance was not necessary for the preservation and enjoyment of the use, reasoning that other Chabad facilities in the area were much smaller but had more parking spaces than the five allowed in this case. The Planning Commission also expressed concern that the proposal for offsite parking was inadequate.

On June 16, 2009, the Los Angeles City Council voted to assert jurisdiction over the Planning Commission's decision under sections 245 and 562 of the L.A. Charter and scheduled a hearing. (See L.A. Charter, §§ 245, 562.) Prior to the June 19, 2009, hearing, Chabad worked with Councilmember Jack Weiss to develop a compromise proposal.

At the city council hearing, after the public comment portion was closed, Councilmember Weiss set forth the proposal and circulated it to the other council members. He proposed modifications such as reducing the height of the building to 28 feet and requiring Chabad to lease parking for invitation-based events. The city council voted to approve the proposal, thus denying appellants' appeal to overturn the zoning administrator's decision and granting Chabad's appeal to modify the zoning administrator's decision. Although the city council members asked a few questions of the Chabad representative, there was no opportunity at the hearing for appellants to address the proposal. The proposal approved by the city council granted Chabad a CUP to build a 12,000-square-foot building, 28 feet high, with 20 percent of the building in the basement, and five parking spaces. The assembly space was now 3,370 square feet instead of 2,400 square feet, with a maximum occupancy of 200 people.

Appellants filed a petition for a writ of mandate in the superior court pursuant to section 1094.5, seeking to overturn the city council's decision. Appellants argued that Chabad had violated its CUP and parking variance for years, with no repercussions by the City, indicating that the parking mitigations put in place by the city council would be ineffectual. They further

argued that the city council made findings that were not supported by substantial evidence, failed to make the requisite findings under CEQA, and violated their due process rights by denying them a fair hearing. Appellants asserted that the city council failed to act as a fair quasi-judicial body because Councilmember Weiss engaged in ex parte contact with Chabad and asked the city council to forego its normal procedure of referring the matter to the council's planning and land use committee. Appellants also claimed that the city council failed to make the findings required by the L.A. Charter and the Municipal Code before a parking variance may be granted.

The superior court held a hearing on May 17, 2010. The court focused on the proper role of the city council in reviewing such a decision. The court questioned the city council's decision to assert jurisdiction, reasoning that the Planning Commission was the body with expertise in zoning issues. The court further stated that the Planning Commission's decision was supported by substantial evidence because the proposed building was large for the neighborhood and there was no provision for adequate parking, and commented that it would have denied a writ from the Planning Commission's decision. The court also expressed concern that the city council did not refer the matter to its zoning experts, the planning and land use committee, and that it adopted a motion that had not been presented to the public.

The parties and the court discussed the differences between the proposal approved by the zoning administrator and that approved by the city council, and appellants' counsel argued that the city council's proposal went beyond the zoning administrator's approval without factual justification. After further discussion, the court asked the parties to file five-page briefs on the city council's role and duties in reviewing such actions.

On May 24, 2010, the superior court entered a decision denying the petition for writ of mandate. The court found that the city council's findings in support of the CUP and the parking variance were supported by substantial evidence.

As to appellants' due process arguments, the court noted that the city council in its role as an appellate body was required to consider only the evidence presented to the zoning administrator and to make written findings specifically denoting how the zoning administrator's decision was erroneous. The court stated that Councilmember Weiss clearly considered "additional matter" when he negotiated the compromise with Chabad, but found that appellants had waived the issue. In the next paragraph, however, the court rejected appellants' argument that Councilmember Weiss violated LAMC section 12.27, subdivision K, which requires the city council to consider only the evidence presented to the zoning administrator, on the basis that the

"secret negotiation" did not constitute new evidence. The court also rejected appellants' contention that the city council violated their due process rights by allowing Councilmember Weiss to present the proposal after the close of the public comment period. The court reasoned that appellants had the opportunity to comment at the public hearing and that there was no requirement that they "be accorded an opportunity to comment on the city council's deliberation about the outcome of the appeal, which is what Councilmember Weiss' motion was."

The court found that the city council violated LAMC section 12.27, subdivision L by failing to state specifically how the zoning administrator's decision was wrong. The court also found that the city council violated *Topanga* by failing to address evidence relied upon by the zoning administrator and failing to "bridge the analytic gap between the raw evidence and ultimate decision or order." (*Topanga, supra,* 11 Cal.3d at p. 515.) The court found, however, that appellants had waived these issues by not raising them earlier. The court further found that appellants had failed to present a claim under CEQA.[2]

On June 30, 2010, the court entered judgment denying the writ of mandate and stating that the court had no opinion regarding attorney fees at that time. Appellants filed a timely notice of appeal.

Chabad filed a motion for attorney fees under section 1021.5, arguing that the defense of the city council's approvals protected the exercise of religion, thus providing a significant benefit to the general public. After holding a hearing, the court denied Chabad's motion, reasoning that the action did not yield a significant benefit to the public at large, but only to Chabad and its development plans for the site. Chabad filed an appeal from that decision, and we consolidated the two appeals.

## DISCUSSION

### I. *Administrative Process*

To aid in understanding the administrative process of review, we set forth an overview of the relevant provisions of the L.A. Charter and the Municipal Code. Conditional use approvals refer to uses of land in zones "when not permitted by right," such as a religious facility in a residential neighborhood, and are addressed in section 563 of the L.A. Charter and section 12.24 of the Municipal Code. (LAMC, § 12.24, subd. A.) Those seeking relief from the application of zoning regulations apply for variances, which are addressed in section 562 of the L.A. Charter and section 12.27 of the Municipal Code.

---

[2] Appellants have not challenged the trial court's CEQA finding on appeal.

In this case, the zoning administrator was tasked with the initial determinations regarding both the CUP and the parking variance.[3] (L.A. Charter, §§ 562, subd. (a), 563, subd. (b); LAMC, §§ 12.24, subds. C, W.9, 12.27, subd. B.) The zoning administrator was required to make certain enumerated findings regarding her decision.[4] (LAMC, §§ 12.24, subd. E, 12.27, subd. D.) Her initial decisions regarding both the CUP and the variance were appealable to an area planning commission, in this case the South Valley Area Planning Commission. (L.A. Charter, §§ 562, subd. (b), 563, subd. (b)(2); LAMC, §§ 12.24, subd. I, 12.27, subd. H.) Before acting on an appeal of either a CUP or a variance, the appellate body must hold a public hearing. (LAMC, §§ 12.24, subd. I.3, 12.27, subd. I.) The Municipal Code imposes similar, although slightly different, requirements on the appellate body's decision, depending on whether the appeal is of the CUP or the variance.

---

[3] An initial determination regarding a CUP may be made by the zoning administrator, the area planning commission, or the City planning commission, depending on factors such as the uses and activities. (LAMC, § 12.24, subds. C, U, V, W & X.) The zoning administrator is the initial decision maker for a CUP for a religious facility in an R-1 zone. (LAMC, § 12.24, subd. W.9.) The initial decision on a variance is always made by the zoning administrator, with some exceptions not relevant here. (LAMC, § 12.27, subd. B.)

[4] As to a CUP, the Municipal Code provides: "In approving any conditional use, the decision-maker must find that the proposed location will be desirable to the public convenience or welfare, is proper in relation to adjacent uses or the development of the community, will not be materially detrimental to the character of development in the immediate neighborhood, and will be in harmony with the various elements and objectives of the General Plan. In addition, the decision-maker shall make any further findings required by Subsections U, V, W, and X and shall determine that the proposed conditional use satisfies any applicable requirements for the use set forth in those sections. The decision-maker shall adopt written findings of fact supporting the decision based upon evidence in the record, including decision-maker or staff investigations." (LAMC, § 12.24, subd. E.)

As to a variance, the Municipal Code states, in relevant part: "Consistent with Charter Section 562, no variance may be granted unless the Zoning Administrator finds all of the following: [¶] 1. that the strict application of the provisions of the zoning ordinance would result in practical difficulties or unnecessary hardships inconsistent with the general purposes and intent of the zoning regulations; [¶] 2. that there are special circumstances applicable to the subject property such as size, shape, topography, location or surroundings that do not apply generally to other property in the same zone and vicinity; [¶] 3. that the variance is necessary for the preservation and enjoyment of a substantial property right or use generally possessed by other property in the same zone and vicinity but which, because of the special circumstances and practical difficulties or unnecessary hardships, is denied to the property in question; [¶] 4. that the granting of the variance will not be materially detrimental to the public welfare, or injurious to the property or improvements in the same zone or vicinity in which the property is located; and [¶] 5. that the granting of the variance will not adversely affect any element of the General Plan. [¶] A variance shall not be used to grant a special privilege or to permit a use substantially inconsistent with the limitations upon other properties in the same zone and vicinity. The Zoning Administrator may deny a variance if the conditions creating the need for the variance were self-imposed." (LAMC, § 12.27, subd. D.)

■ Because the zoning administrator was the initial decision maker regarding the CUP, her decision was appealed to the Planning Commission.[5] (LAMC, § 12.24, subd. I.2.) In an appeal of a CUP decision, "the appellate body shall make its decision, based on the record, as to whether the initial decision-maker erred or abused his or her discretion." (*Id.*, subd. I.3.) The appellate body may reverse or modify the decision of the zoning administrator, and "any resolution to approve must contain the same findings required to be made by the initial decision-maker, supported by facts in the record." (*Id.*, subd. I.5.)

A decision on a variance is appealed to the area planning commission. (LAMC, § 12.27, subd. H.) The Municipal Code requires that, in an appeal of a variance, "[t]he Area Planning Commission shall base its decision only upon: [¶] 1. evidence introduced at the hearing or hearings, if any, before the Zoning Administrator, on the issue; and [¶] 2. the record, findings, and decision of the Zoning Administrator; and [¶] 3. the consideration of arguments, if any, presented to the Area Planning Commission orally or in writing. [¶] If any applicant or aggrieved person wishes to present any new evidence in connection with the matter, he or she shall file with the Area Planning Commission a written summary of that evidence, together with a statement as to why that evidence could not reasonably have been presented to the Zoning Administrator. If the Area Planning Commission determines that the evidence could not reasonably have been presented to the Zoning Administrator and the evidence is of such a nature as might reasonably have led to a different decision by the Zoning Administrator, the Area Planning Commission shall remand the matter to the Zoning Administrator." (LAMC, § 12.27, subd. K.)

In addition, "[t]he Area Planning Commission may reverse or modify the ruling or decision appealed from only upon making written findings setting forth specifically the manner in which the action of the Zoning Administrator was in error or constituted an abuse of discretion." (LAMC, § 12.27, subd. L.)

Here, the city council asserted jurisdiction over the Planning Commission's decision pursuant to section 245 of the L.A. Charter, which gives the city

---

[5] A decision regarding a CUP may be appealed to the area planning commission or the city council, depending on who made the initial decision. The Municipal Code provides: "An applicant or any other person aggrieved by the initial decision of the Zoning Administrator may appeal the decision to the Area Planning Commission. An applicant or any other person aggrieved by the initial decision of the Area Planning Commission or the City Planning Commission may appeal the decision to the City Council." (LAMC, § 12.24, subd. I.2.)

council authority over the actions of various boards of commissioners.[6] The section specifically addresses the council's authority over the City planning commission and area planning commissions, providing as follows: "The Council shall not be limited to veto of actions of the City Planning Commission or Area Planning Commissions, but, subject to the time limits and other limitations of this section, after voting to bring the matter before it, shall have the same authority to act on a matter as that originally held by the City Planning Commission or Area Planning Commission." (L.A. Charter, § 245, subd. (e).) The city council accordingly steps into the shoes of the planning commission in reviewing the zoning administrator's decisions regarding the CUP and the variance.

 The L.A. Charter further states that the process for approval of a CUP may not include more than one level of appeal. (L.A. Charter, § 563, subd. (b)(2).) However, review by the city council pursuant to L.A. Charter, section 245 is not considered an appeal for purposes of the restriction on the number of appeals.[7] (L.A. Charter, § 563, subd. (b)(2)(C).)

The area planning commission's *grant* of a variance may be appealed to the City planning commission or city council; however, there is no appeal from the *denial* of a variance by the area planning commission. (L.A. Charter, § 562, subd. (b); LAMC, § 12.27, subd. *O*.) The area planning commission's denial of a variance may, however, be reviewed by the city council pursuant to section 245 of the city charter. (L.A. Charter, § 562, subd. (b).)

Under L.A. Charter sections 245, 526, and 563, therefore, the city council had authority to review the Planning Commission's decision on the CUP and the variance. In doing so, the city council's authority was the same as that originally held by the Planning Commission.

---

[6] The section provides that "[a]ctions of boards of commissioners shall become final at the expiration of the next five meeting days of the Council during which the Council has convened in regular session, unless the Council acts within that time by two-thirds vote to bring the action before it . . . ." (L.A. Charter, § 245.)

[7] The section on the appeals process states, in pertinent part: "An aggrieved person may appeal a decision of the Zoning Administrator with respect to a conditional use permit or similar quasi-judicial approval to the Area Planning Commission. Decisions of an Area Planning Commission, except those decisions made by the Area Planning Commission on appeal from a decision of the Zoning Administrator, may be appealed either to the City Planning Commission or Council, as provided by ordinance. However, the process for the approval of conditional use permits and similar quasi-judicial approvals may not include more than one level of appeal from the decision of a decision-making official or body. For purposes of this restriction: [¶] . . . [¶] (C) Council review of an action under Charter Section 245 shall not be considered an appeal for purposes of this section." (L.A. Charter, § 563, subd. (b)(2).)

## II. *Waiver*

Appellants argue that the trial court erred in finding that they waived the issue whether the city council violated *Topanga* and LAMC section 12.27, subdivision L by failing to explain why the zoning administrator's decision was wrong.[8] After examining the record, we conclude that appellants did not waive the issue.

Appellants argued in their petition that the city council violated *Topanga* and LAMC section 12.27 by granting the CUP and parking variance without making the requisite legal findings and without evidentiary support. In addition, appellants repeatedly argued at the hearing that the city council was required but failed to make any findings regarding how the zoning administrator's decision was erroneous. Their five-page supplemental brief filed in response to the court's direction also contains the argument that the city council was required to make findings to support its decision that the zoning administrator erred or abused her discretion. Thus, although we are sympathetic to the trial court's concern that appellants did not timely raise the issue, the record indicates that they raised it sufficiently to give the opposing parties and the trial court the opportunity to address the issue. (See *Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184–185, fn. 1 [151 Cal.Rptr. 837, 588 P.2d 1261] [explaining that the waiver doctrine ensures fairness to the trial judge and the adverse party].) We therefore conclude that appellants did not waive the issue.

## III. *Section 1094.5*

### A. *General Principles*

"Section 1094.5 makes administrative mandamus available for review of 'any final administrative order or decision made as the result of a proceeding in which *by law* a hearing is required to be given, evidence is required to be taken and discretion in the determination of facts is vested in the inferior tribunal, corporation, board or officer.' " (*Topanga, supra,* 11 Cal.3d at p. 515, fn. 12.) "[I]mplicit in section 1094.5 is a requirement that the agency which renders the challenged decision must set forth findings to bridge the analytic gap between the raw evidence and ultimate decision or order." (*Id.* at p. 515.)

"In reviewing an agency's decision under Code of Civil Procedure section 1094.5, the trial court determines whether (1) the agency proceeded without,

---

[8] The trial court also found that appellants waived the question whether Councilmember Weiss violated the duty of impartiality by negotiating the compromise with Chabad. We do not address appellants' argument regarding the waiver of this issue because, as discussed below, we need not address appellants' due process arguments.

or in excess of, jurisdiction; (2) there was a fair hearing; and (3) the agency abused its discretion. [Citation.]" (*McAllister v. California Coastal Com.* (2008) 169 Cal.App.4th 912, 921 [87 Cal.Rptr.3d 365]; see § 1094.5, subd. (b).) "Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence."[9] (§ 1094.5, subd. (b).) "The trial court and appellate court apply the same standard; the trial court's determination is not binding on us. [Citation.]" (*Neighbors in Support of Appropriate Land Use v. County of Tuolumne* (2007) 157 Cal.App.4th 997, 1004 [68 Cal.Rptr.3d 882].)

The grant of a zoning variance is a "quasi-judicial, administrative" function. (*Topanga, supra,* 11 Cal.3d at p. 517.) A court reviewing the grant of a zoning variance "must scrutinize the record and determine whether substantial evidence supports the administrative agency's findings and whether these findings support the agency's decision." (*Id.* at p. 514.) "In determining whether the findings are supported, '[w]e may not isolate only the evidence which supports the administrative finding and disregard other relevant evidence. [Citations.] On the other hand, neither we nor the trial court may disregard or overturn the . . . finding " 'for the reason that it is considered that a contrary finding would have been equally or more reasonable.' " [Citations.]' [Citation.]" (*Craik v. County of Santa Cruz* (2000) 81 Cal.App.4th 880, 884 [96 Cal.Rptr.2d 538].)

Here, by taking jurisdiction over the matter pursuant to section 245 of the city charter, the city council had the same authority to act as that originally held by the Planning Commission. (L.A. Charter, § 245, subd. (e).) Thus, in reviewing the CUP, the city council was required to "make its decision, based on the record, as to whether the initial decision-maker erred or abused his or her discretion." (LAMC, § 12.24, subd. I.3.) In addition, in reviewing the variance, the city council was required to base its decision only on the evidence and findings of the zoning administrator and to modify the zoning administrator's decision only by setting forth specifically the manner in which the zoning administrator erred. (LAMC, § 12.27, subds. K, L.) We agree with the trial court that the city council abused its discretion by failing to follow these requirements of the Municipal Code and that the city council did not fulfill the requirement that it "set forth findings to bridge the analytic gap between the raw evidence and ultimate decision or order." (*Topanga, supra,* 11 Cal.3d at p. 515.)

---

[9] Here, the trial court found that the city council's findings were supported by the evidence. Because we find that the city council did not proceed in the manner required by law, we need not address whether the findings were supported by the evidence.

B. *Requirements of Municipal Code*

As the trial court reasoned, the proposal Councilmember Weiss made at the city council meeting differed in several material respects from the proposal approved by the zoning administrator. Thus, the city council's decision was not based on the record as to whether the zoning administrator abused her discretion in granting the CUP, as required by LAMC section 12.24, subdivision I. Nor was the city council's decision based only on the evidence and findings of the zoning administrator regarding the variance, in contravention of LAMC section 12.27, subdivision K.[10] Finally, when the city council modified the zoning administrator's decision regarding the variance, it did not set forth specifically the manner in which the zoning administrator erred, as required by LAMC section 12.27, subdivision L.

First, with respect to the CUP, the zoning administrator found that the proposed project was too large for the parcel and location. The zoning administrator thus approved a 10,300-square-foot building with 40 percent of it in the basement, resulting in about 6,100 square feet above ground. The city council approved a 12,000-square-foot building with 20 percent of it in the basement, resulting in about 9,600 square feet above ground. Although the city council reduced the height from the 33 feet approved by the zoning administrator to 28 feet, the amount of the building above ground increased substantially.

The zoning administrator also reviewed 43 homes in the immediate neighborhood of the proposed building and found that the proposed assembly space of 3,654 square feet was larger than the total dwelling size of 38 of those 43 homes. The zoning administrator thus described the building as "significantly intense" for a residential neighborhood.

In addition, the zoning administrator pointed out that the proposed facility was "part of an umbrella entity know[n] as Chabad of the Valley," and that Chabad's proposed building was significantly larger than two other Chabad facilities. Specifically, the zoning administrator explained that the Chabad of Sherman Oaks was approved for a building of 8,762 square feet, with 15 parking spaces in lieu of 87, and the Chabad of Encino was approved for 6,700 square feet with 35 parking spaces. The zoning administrator thus found that "a more reasonable facility in terms of size can be built which can still provide adequate space for the activities associated with the use." In keeping with her findings, she limited the assembly space to 2,400 square feet

---

[10] We disagree with appellants that the city council's action was ultra vires and void *ab initio*. The city council had the authority to vote to bring the matter before it under section 245 of the L.A. Charter. The city council's deviation from the process of review set forth in the L.A. Charter and the LAMC did not render its action ultra vires.

for both the synagogue's sanctuary and a multipurpose room, explaining that a significantly smaller space than that proposed would accommodate the proposed uses. By contrast, the city council allowed an assembly space of 3,370 square feet.

In approving the CUP, the city council did not address the evidence before the zoning administrator or her findings regarding the size of the proposed building relative to homes in the neighborhood and other similar facilities or the size of the assembly space. Nor did the city council explain how the zoning administrator's decision to limit the proposed building to 6,100 square feet above ground and to limit the size of the assembly space was erroneous or an abuse of discretion. (See LAMC, § 12.24, subd. I.3.)

Second, as to the parking variance, the zoning administrator's cap of 2,400 square feet on the assembly space would have required 68 parking spaces. By contrast, the assembly space of 3,370 square feet allowed by the city council required 97 parking spaces. Thus, although both the zoning administrator and the city council allowed a variance of five parking spaces, the city council allowed a larger variance because of the increase in the required number of spaces. By considering a proposal different from that considered by the zoning administrator, the city council's decision was not based solely on the evidence before the zoning administrator and the findings she made regarding the variance. (See LAMC, § 12.27, subd. K.) Moreover, this modification of the parking variance was made with no explanation as to how the zoning administrator erred or abused her discretion. (See LAMC, § 12.27, subd. L.)

Chabad contends that the city council satisfied its obligations under the Municipal Code and *Topanga*. Chabad relies on *Lagrutta v. City Council* (1970) 9 Cal.App.3d 890 [96 Cal.Rptr. 627] (*Lagrutta*), to argue that the city council reviews CUP and variance appeals de novo. *Lagrutta*, however, examined the charter of the City of Stockton, not Los Angeles, and concluded that "[w]e know of no reason why the council should be restricted solely to a review of the record before the commission where specific procedures have not been established by ordinance. [Citation.]" (9 Cal.App.3d at p. 895.) However, the Stockton charter addressed by *Lagrutta* differs from that of Los Angeles. Here, the L.A. Charter specifically states that appeals of CUP's and variances are to be prescribed by ordinance, and the Municipal Code sets forth the appeals process in detail. (See L.A. Charter, §§ 562, subd. (b), 563, subd. (b)(2); LAMC, §§ 12.24, subd. I, 12.27, subds. H–P.)

As we have stated, the Municipal Code requires the appellate body's decision to be based on the record as to whether the zoning administrator erred or abused her discretion, and the appellate body is required to set forth specifically how the zoning administrator erred. (LAMC, §§ 12.24, subd. I,

12.27, subds. K, L.) The city council specifically stated at the hearing that it was overturning the zoning administrator's action in granting Chabad's appeal, yet it failed to make the findings required under the Municipal Code in doing so.

Chabad also argues that the city council's statements constituted implicit findings of error by the zoning administrator and that such findings are adequate to fulfill the council's obligations. Even if implicit findings of error may in some circumstances be sufficient, here the city council made no findings of error by the zoning administrator, either explicit or implicit. As the trial court noted, the city council did not even mention the zoning administrator's findings in its decision.

### C. *Requirements of* Topanga

■ The city council was required under *Topanga* " 'to bridge the analytic gap between the raw evidence and ultimate decision' and to show the 'analytic route the administrative agency traveled from evidence to action.' [Citation.] . . . The findings requirement 'serves to conduce the administrative body to draw legally relevant sub-conclusions supportive of its ultimate decision; the intended effect is to facilitate orderly analysis and minimize the likelihood that the agency will randomly leap from evidence to conclusions.' [Citation.]" (*Great Oaks Water Co. v. Santa Clara Valley Water Dist.* (2009) 170 Cal.App.4th 956, 971 [88 Cal.Rptr.3d 506] (*Great Oaks*).)

Here, the city council's CUP findings set forth the details of the project and state that the permit has been granted, with no indication of the reason for the ultimate decision. For example, the findings regarding whether the proposal was proper in relation to adjacent uses contain no reference to the evidence discussed by the zoning administrator regarding adjacent uses, such as the sizes of neighboring homes and other Chabad synagogues in the area. There is no indication of the analytic route between the raw evidence and the ultimate decision.

■ We acknowledge that " 'administrative findings need not be as precise or formal as would be required of a court [citation].' " (*Sierra Club v. California Coastal Com.* (1993) 19 Cal.App.4th 547, 556 [23 Cal.Rptr.2d 534].) Nonetheless, " 'mere conclusory findings without reference to the record are inadequate. [Citation.]' [Citation.]" (*Great Oaks, supra,* 170 Cal.App.4th at p. 971.) Here, we are presented with such conclusory findings.

The agency's findings may "still be determined to be sufficient if a court has 'no trouble under the circumstances discerning "the analytic route the

administrative agency traveled from evidence to action." [Citations.]' [Citation.]" (*Great Oaks, supra*, 170 Cal.App.4th at p. 971.) On this record, however, we cannot discern the analytic route the city council traveled from evidence to action.

" '*Topanga* makes it clear that despite the applicability of the substantial evidence rule and the deference due to the administrative findings and decision, judicial review of zoning variances must not be perfunctory or mechanically superficial. "Vigorous and meaningful judicial review facilitates, among other factors, the intended division of decision-making labor [in land-use control]. Whereas the adoption of zoning regulations is a legislative function (Gov. Code, § 65850), the granting of variances is a quasi-judicial, administrative one. [Citations.] If the judiciary were to review grants of variances superficially, administrative boards could subvert this intended decision-making structure. [Citation.] They could '[amend] . . . the zoning code in the guise of a variance' [citation], and render meaningless, applicable state and local legislation prescribing variance requirements. [¶] Moreover, courts must meaningfully review grants of variances in order to protect the interests of those who hold rights in property nearby the parcel for which a variance is sought. A zoning scheme, after all, is similar in some respects to a contract; each party forgoes rights to use its land as it wishes in return for the assurance that the use of neighboring property will be similarly restricted, the rationale being that such mutual restriction can enhance total community welfare. [Citations.] If the interest of these parties in preventing unjustified variance awards for neighboring land is not sufficiently protected, the consequence will be subversion of the critical reciprocity upon which zoning regulation rests. [¶] Abdication by the judiciary of its responsibility to examine variance board decision-making when called upon to do so could very well lead to such subversion. . . . Vigorous judicial review . . . can serve to mitigate the effects of insufficiently independent decision-making." [Citation.]' [Citation.]" (*Stolman v. City of Los Angeles* (2003) 114 Cal.App.4th 916, 923–924 [8 Cal.Rptr.3d 178].)

■ By approving a proposal materially different from that addressed by the zoning administrator, the city council acted on evidence not in the record before the zoning administrator and acted without any reference to the zoning administrator's findings. The city council's conclusory findings did not show how the city council traveled from evidence to action nor indicate how the zoning administrator erred or abused her discretion. We therefore reverse the denial of the petition for a writ of administrative mandamus.

■ In light of our conclusion that the city council abused its discretion by failing to proceed in the manner required by law, we need not consider appellants' arguments that their due process rights were violated by the city

council allegedly acting in a legislative manner rather than a quasi-judicial manner, because it is not necessary to our disposition of the appeal. (See *Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2006) 40 Cal.4th 1, 17, fn. 13 [50 Cal.Rptr.3d 585, 145 P.3d 462] ["As a prudential matter, we routinely decline to address constitutional questions when it is unnecessary to reach them."]; *Palermo v. Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 65 [195 P.2d 1]; *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 259 [88 Cal.Rptr.3d 186].)

## DISPOSITION

The judgment of the superior court in case No. B226663 denying the petition for a writ of administrative mandamus is reversed. On remand, the city council is to comply with the requirements of the Municipal Code and *Topanga* in reviewing the zoning administrator's decisions on the CUP and variance. Chabad's appeal in case No. B229418 of the denial of its motion for attorney fees is dismissed as moot. West Chandler to recover its costs on appeal.

Epstein, P. J., and Manella, J., concurred.