Filed 11/18/14  W. Chandler Blvd. Neighborhood Assn. v. City of Los Angeles CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| WEST CHANDLER BLVD. NEIGHBORHOOD ASSOCIATION et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CITY OF LOS ANGELES, <br><br> Defendant and Respondent; <br><br> CHABAD OF THE VALLEY; CHABAD OF NORTH HOLLYWOOD, <br><br> Real Parties in Interest. | B253639 <br><br> (Los Angeles County  Super. Ct. No. BS139559) |

APPEAL from a judgment of the Superior Court of Los Angeles County, James C. Chalfant, Judge.  Affirmed.

Law Offices of Noel Weiss and Noel W. Weiss; Law Offices of Mark Shipow and Mark S. Shipow for Plaintiffs and Appellants.

Michael N. Feuer, City Attorney, Terry P. Kauffman-Macias and Tayo A. Popoola, Deputy City Attorneys, for Defendant and Respondent City of Los Angeles.

Jeffer, Mangels, Butler & Mitchell, Benjamin M. Reznik and Matthew D. Hinks for Real Parties in Interest.

This is the second time these parties are before us in an appeal by the West Chandler Boulevard Neighborhood Association, Mitchell Ramin and Jeff Gantman (collectively appellants) from a denial of a petition for writ of administrative mandate (Code Civ. Proc., § 1094.5). [1] In the prior appeal (*West Chandler Boulevard Neighborhood Assn. v. City of Los Angeles* (2011) 198 Cal.App.4th 1506 (*West Chandler I*)), we held that in overturning the decisions of a zoning administrator that imposed restrictions on a conditional use permit (CUP) and parking variance for a proposed expansion of a synagogue owned by real parties in interest Chabad of the Valley, Inc., and Chabad of North Hollywood (collectively Chabad), respondent the City of Los Angeles (the City) failed to comply with the Los Angeles City Charter (L.A. Charter), the Los Angeles Municipal Code (LAMC or Municipal Code), and *Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506 (*Topanga*). We therefore reversed the trial court's denial of appellants' petition for writ of administrative mandamus, and remanded the matter with directions that the "city council . . . comply with the requirements of the Municipal Code and *Topanga* in reviewing the zoning administrator's decisions on the CUP and variance." (*West Chandler I, supra,* 198 Cal.App.4th at p. 1523.)

Following remand, the city council again overturned the zoning administrator's decisions on the CUP and variance, and granted Chabad permission to build an extensive expansion of the synagogue. The trial court denied appellants' petition for writ of mandate challenging the City's action, finding that the city council did not abuse its discretion. In this second appeal from a denial of administrative mandate, appellants contend that: (1) the City had no jurisdiction to

---

[1] Any undesignated statutory references are to the Code of Civil Procedure.

2

approve a project that was not first presented to the zoning administrator; (2) substantial evidence does not support the City's reversal of the zoning administrator's factual findings; (3) the City failed to "set forth findings to bridge the analytical gap between the raw evidence and the ultimate decision or order," as required by *Topanga, supra,* 11 Cal.3d at page 515 and *West Chandler I, supra,* 198 Cal.App.4th at pages 1521-1522; and (4) the City improperly refused to remand the matter to the zoning administrator to consider new evidence offered by appellants. We are not persuaded by these contentions, and affirm the trial court's denial of the writ.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Prior Appeal*

The following facts are taken from our prior opinion.

"Chabad has operated a synagogue since 1981 in a 1,500-square-foot one-story building, located at 13079 West Chandler Boulevard, in an R-1 zoned residential community. The property is triangular, bounded by three streets, and is approximately 9,568 square feet in area.

"In 1981, the City granted Chabad a CUP and parking variance, allowing it to use the property to operate a Jewish synagogue with a congregation of approximately 45 people and to maintain only seven parking spaces instead of the 20 spaces that would have been required based on the size of the assembly space. By 2007, the congregation had grown to about 200 people.

"In March 2007, Chabad applied to the City for permission to demolish the one-story building and build a 16,100-square-foot three-story building. Chabad sought a variance to allow a building height of 45 feet instead of 36 feet and a

3

parking variance to allow five parking spaces instead of the requisite 83 spaces. [¶] . . .

"On November 25, 2008, the City zoning administrator approved aspects of Chabad's proposal, under numerous terms and conditions. As pertinent here, the zoning administrator approved a CUP for Chabad to build a religious facility in the R-1 zone, but she limited the facility to 10,300 square feet and required a minimum of 40 percent of the square footage to be at basement level. She denied a variance to permit a building height of 37 feet rather than 33 feet, or 28 feet for a roof with a slope less than 25 percent. She limited the assembly space to 2,400 square feet and so approved a parking variance to provide five parking spaces instead of the 68 required for an assembly space of that size. Chabad had proposed an assembly space of 3,654 square feet, which would have required 104 parking spaces. The zoning administrator imposed numerous other conditions, such as limiting the hours of operation to 7:00 a.m. to 10:00 p.m.

"Appellants appealed to the South Valley Area Planning Commission (Planning Commission), raising concerns such as the size of the building, the exacerbation of already existing problems with traffic, noise, and parking, and the inconsistency of the proposed building with the residential neighborhood. Chabad also appealed, asking for permission to build a building totaling 18,049 square feet, with hours of operation from 6:30 a.m. to 11:00 p.m., and seeking other modifications to the project.

"The Planning Commission held a hearing on February 12, 2009, at which it granted appellants' appeal and denied Chabad's appeal. At the hearing, the commissioners expressed concern with parking and with the size of the building relative to the lot. The Planning Commission found that the project was much too large for the size of the lot, would be materially detrimental to the character of the

4

neighborhood, and would not be in harmony with the City's general plan. It further found that there was insufficient parking for the facility, despite the religious ban on driving on certain days, noting that there would be numerous events with high attendance and no driving restrictions. The Planning Commission found that the parking variance was not necessary for the preservation and enjoyment of the use, reasoning that other Chabad facilities in the area were much smaller but had more parking spaces than the five allowed in this case. The Planning Commission also expressed concern that the proposal for offsite parking was inadequate.

"On June 16, 2009, the Los Angeles City Council voted to assert jurisdiction over the Planning Commission's decision under sections 245 and 562 of the L.A. Charter and scheduled a hearing. (See L.A. Charter, §§ 245, 562.) Prior to the June 19, 2009, hearing, Chabad worked with Councilmember Jack Weiss to develop a compromise proposal.

"At the city council hearing, after the public comment portion was closed, Councilmember Weiss set forth the proposal and circulated it to the other council members. . . . The city council voted to approve the proposal, thus denying appellants' appeal to overturn the zoning administrator's decision and granting Chabad's appeal to modify the zoning administrator's decision. Although the city council members asked a few questions of the Chabad representative, there was no opportunity at the hearing for appellants to address the proposal. The proposal approved by the city council granted Chabad a CUP to build a 12,000 square foot building, 28 feet high, with 20 percent of the building in the basement, and five parking spaces. The assembly space was now 3,370 square feet instead of 2,400 square feet, with a maximum occupancy of 200 people." (*West Chandler I*, *supra*, 198 Cal.App.4th at pp. 1509-1511.)

Appellants filed a petition for writ of mandate in the superior court, which was denied. On appeal, we concluded that the city council abused its discretion by failing to follow the requirements of the Municipal Code that it "base its decision only on the evidence and findings of the zoning administrator and to modify the zoning administrator's decision only by setting forth specifically the manner in which the zoning administrator erred. [Citation.]" (*West Chandler I*, *supra*, 198 Cal.App.4th at p. 1518.) We further held that the city council failed to fulfill the requirement that it "'set forth findings to bridge the analytic gap between the raw evidence and ultimate decision or order.' [Citation.]" (*Ibid.*, citing *Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506 (*Topanga*).) We therefore reversed the denial of the writ petition.

2. *The Current Appeal*

On remand, the trial court issued a writ of mandate, directing the City to set aside its June 2009 decision and reconsider its decision in compliance with the Municipal Code and *Topanga*. The City filed a return to the writ, stating that it had set aside its decision and referred the matter to the Planning and Land Use Management Committee (PLUM Committee), pursuant to L.A. Charter section 245. The return indicated that a public hearing by the PLUM Committee was scheduled for June 26, 2012, and the city council was scheduled to consider the matter on June 27, 2012.

At the public hearing, the PLUM Committee adopted additional findings submitted by Chabad. The findings adopted by the PLUM Committee were that the zoning administrator abused her discretion in four aspects in modifying Chabad's proposal: "1. The massing of the facility; [¶] 2. The size of the requested assembly/worship space; [¶] 3. The requested yard adjustments; and

6

[¶] 4. The parking variance associated with the reduced facility and assembly/worship space."

The PLUM Committee recommended that the city council grant in part and deny in part Chabad's appeal and deny appellants' appeal from the zoning administrator's decision. The city council conducted a public hearing and adopted the recommendation of the PLUM Committee in full, with one modification.

Appellants filed another petition for writ of mandate and a complaint to abate an ongoing public nuisance. At the hearing on these matters, the trial court expressed its belief that the zoning administrator's decision was correct. The court further reasoned that the zoning administrator and the Planning Commission were "the experts, and we don't want politics to intrude in City Council review of these decisions." Nonetheless, the court reasoned that it was not entitled to "substitute [its] judgment that the Zoning Administrator was right for the City Council's judgment." The court therefore denied the petition. Appellants dismissed their cause of action regarding a public nuisance, and the trial court entered judgment in favor of Chabad.

**DISCUSSION**

I. *Standard of Review*

Given the administrative procedural context in which this case arises, it is important to focus on the decision that is the subject of our review. That decision is not the decision of the zoning administrator. Rather, it is the decision of the city council – the final administrative decision-maker. (See *City of Fillmore v. Board of Equalization* (2011) 194 Cal.App.4th 716, 726 ["A court may review only a decision by the final administrative decision maker."]; § 1094.5, subd. (a) [writ review inquires "into the validity of any *final administrative order or decision*

7

made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal, corporation, board, or officer" (italics added).]

As we have explained, the zoning administrator made the initial decision to grant a CUP and parking variance, albeit on terms more limited than those sought by Chabad. (*West Chandler I, supra,* 198 Cal.App.4th at p. 1510.) Following an appeal to the planning commission, which overturned the zoning administrator's decision and denied a CUP and variance (*id.* at p. 1510-1511), the city council assumed jurisdiction over the matter as permitted by section 245 of the City Charter. (*Id.* at p. 1511.) The city council then reversed the zoning administrator, and issued a less restrictive CUP and variance than granted by the zoning administrator.

Under section 245 of the City Charter, the city council had the same authority as the planning commission to reverse or modify the zoning administrator's decision. (*West Chandler I, supra*, 198 Cal.App.4th at pp. 1515-1516.) As to both the CUP and the variance, that authority was, in substance, to determine whether the zoning administrator abused her discretion, and to reverse or modify the zoning administrator's decision, based on factual findings supported by evidence in the record presented to the zoning administrator. Thus, as to the CUP, the Municipal Code gave the planning commission, and hence the city council, the power (1) to determine, based on a review of the record, whether the zoning administrator abused her discretion (*id.* at p. 1514, citing LAMC, § 12.24, subd. I.3), and (2) to reverse or modify the zoning administrator's decision, with the limitation that "'any resolution to approve [a CUP] must contain the same findings required to be made by the initial decision-maker [here, the zoning administrator], supported by facts in the record'" (*id.* at p. 1515, quoting LAMC,

8

§ 12.24, subd. I.5).[2]  Similarly, as to the variance, the Municipal Code gave the planning commission, and thus the city council, the authority to review the decision of the zoning administrator, with the limitation (as here relevant) that the city council's decision must be based on the evidence presented to the zoning administrator (*West Chandler I, supra,* 198 Cal.App.4th at p. 1515, citing LAMC, § 12.27, subd. K), and that a reversal or modification of the zoning administrator's decision must be supported by "'written findings setting forth specifically the manner in which the action of the Zoning Administrator was in error or constituted an abuse of discretion'" (*ibid.,* quoting LAMC, § 12.27, subd. L).

Given the nature of the city council's decision-making authority under the Charter and Municipal Code, the focus of our review is the city council's factual findings that reversed the zoning administrator (finding an abuse of discretion) and that modified her decision by granting the CUP and variance at issue.  The level of our review of the city council's findings is circumscribed by established law.  We do not examine the record to determine whether the city council's decision  was more or less reasonable than that of the zoning administrator.  Rather, we determine only whether substantial evidence in the record supports the city council's findings that reversed and modified the zoning administrator's decision.

"[A] court reviewing the grant of a zoning variance 'must determine whether substantial evidence supports the findings and whether the findings support the conclusion that all applicable legislative requirements for a variance have been

---

[2]     As here relevant, the findings required to grant a CUP are "'that the proposed location will be desirable to the public convenience or welfare, is proper in relation to adjacent uses or the development of the community, will not be materially detrimental to the character of development in the immediate neighborhood, and will be in harmony with the various elements and objectives of the General Plan.'"  (*Id.* at p. 1514, fn. 4, quoting LAMC, § 12.24, subd. E.)

9

satisfied.' [Citation.] '"In determining whether the findings are supported, '[w]e may not isolate only the evidence which supports the administrative finding and disregard other relevant evidence in the record. [Citations.] On the other hand, neither we nor the trial court may disregard or overturn the . . . finding '"for the reason that it is considered that a contrary finding would have been equally or more reasonable.""'" [Citation.] We 'must afford a strong presumption of correctness' to administrative findings. [Citation.] 'Under the substantial evidence test, the agency's findings are presumed to be supported by the administrative record and the appellant challenging them has the burden to show they are not.' [Citation.]" (*Eskeland v. City of Del Mar* (2014) 224 Cal.App.4th 936, 942.)

In short, because we review the findings of the city council for substantial evidence, we may not overturn the council's grant of the CUP and variance merely because the evidence might also support the zoning administrator's initial decision, or even because the zoning administrator's decision seems more reasonable. Rather, we examine only whether substantial evidence in the record supports the city council's findings reversing and modify that decision. (See *West Chandler I, supra*, 198 Cal.App.4th at p. 1518 [a court may not overturn an agency's findings simply because a contrary finding would have been equally or more reasonable].)


II. *Failure to Resubmit the Project to the Zoning Administrator*

Appellants contend that the city council exceeded its jurisdiction and abused its discretion by reapproving the project proposed by Councilman Weiss without resubmitting it to the zoning administrator. They assert, in substance, that this process violated our decision in *West Chandler I* by again relying on matters

10

outside the findings made by, and record presented to, the zoning administrator.**3** (See *West Chandler I*, *supra*, 198 Cal.App.4th at p. 1518 [explaining that the relevant portions of the Municipal Code required the city council's decision to be based on the record before the zoning administrator]; LAMC, § 12.24, subd. I.3 ["When considering an appeal from the decision of an initial decision-maker [the zoning administrator], the appellate body [here, the city council] shall make its decision, based on the record, as to whether the initial decision-maker erred or abused his or her discretion."]; LAMC, § 12.27, subd. K [requiring the decision on appeal to be based only upon evidence introduced at the hearing before the zoning administrator].)

Appellants misunderstand our prior decision in *West Chandler I*. We did not hold that the City was required to resubmit the proposal to the zoning administrator before approving it. As we explained, the city council assumed jurisdiction over the Planning Commission's decision in the appeal from the zoning administrator's decisions on the CUP and the variance. In doing so, the city council also assumed the same authority as the Planning Commission to reverse or modify the zoning administrator's decisions on the CUP and variance.**4** We held that the Municipal

---

**3**    We disagree with respondents' contention that appellants waived any argument regarding the sufficiency of the evidence by failing to submit a complete record. The administrative record contains the relevant evidence, including Chabad's application and the decisions of the zoning administrator, the South Valley Area Planning Commission, the PLUM Committee, and the city council.

**4**    As we explained, in an appeal to the Planning Commission from a zoning administrator's decision on a CUP, the Planning Commission has the authority under LAMC section 12.24, subdivision I.5, to "reverse or modify the decision of the zoning administrator, and 'any resolution to approve [a CUP] must contain the same findings required to be made by the initial decision-maker, supported by facts in the record.'" (*West Chandler I, supra*, 198 Cal.App.4th at p. 1515, citing LAMC, § 12.24, subd. I.5.) The Planning Commission has similar authority when considering an appeal from a

11

Code required the City to base its decision to overturn the zoning administrator's findings on the record submitted to the zoning administrator, and also required the City to set forth specifically how the zoning administrator erred. (198 Cal.App.4th at pp. 1520-1521.) Further, we held that the City violated *Topanga, supra*: "By approving a proposal materially different from that addressed by the zoning administrator, the city council acted on evidence not in the record before the zoning administrator and acted without any reference to the zoning administrator's findings. The city council's conclusory findings did not show how the city council traveled from evidence to action nor indicate how the zoning administrator erred or abused her discretion." (198 Cal.App.4th at p. 1522.) We therefore directed that "[o]n remand, the city council is to comply with the requirements of the Municipal Code and *Topanga* in reviewing the zoning administrator's decisions on the CUP and variance." (*Id.* at p. 1523.) We did not question the authority of the City to overturn the zoning administrator's findings and approve a modified project, so long as the City followed these legal requirements. Thus, appellants are incorrect in asserting that the City was without authority to overturn the zoning administrator's findings and approve the current project without first resubmitting it to the zoning administrator.

---

zoning administrator's decision on a variance; it can "'reverse or modify the ruling or decision appealed from only upon making written findings setting forth specifically the manner in which the action of the Zoning Administrator was in error or constituted an abuse of discretion.'" (*West Chandler I, supra*, 198 Cal.App.4th at p. 1515, citing LAMC, § 12.27, subd. L.) As we also explained, "[u]nder L.A. Charter sections 245, 526, and 563 . . . the city council had authority to review the Planning Commission's decision on the CUP and the variance. In doing so, the city council's authority was the same as that originally held by the Planning Commission" (*West Chandler I, supra*, 198 Cal.App.4th at p. 1516), namely, to reverse or modify the zoning administrator's decisions on the CUP and variance.

Appellants contend that the city council did not actually review the underlying evidence because it simply adopted verbatim the findings proposed by Chabad. However, the city council's decision states that the findings are those of the city council. That Chabad prepared and submitted the proposed findings that were adopted does not mean that the findings are not the findings of the City. To the contrary, we presume that the city council made the findings itself. (See *Hoitt v. Department of Rehabilitation* (2012) 207 Cal.App.4th 513, 521 (*Hoitt*) ["It is presumed that an administrative agency regularly performed its duty."].)

Moreover, while the City ultimately approved a proposal identical to that previously approved in *West Chandler I*, the City's findings now address the zoning administrator's findings and delineate the City's reasons for disagreeing with her decision. In doing so, the City relied on the staff report prepared by a zoning administration staff investigator and the zoning administrator's decision, and it specifically stated that it considered the record before the zoning administrator in making its decision. Thus, appellants' contention that the City violated our prior decision by reapproving the same proposal and relying on evidence not before the zoning administrator is unavailing.

III. *Sufficiency of the Evidence to Support the City's Findings*

Appellants contend that the record is insufficient to support the city council's findings. We disagree.

A. *The City's Findings*

1. *Reduction of Square Footage*

The city council concluded that the zoning administrator abused her discretion in three ways. First, the city council found that the zoning administrator

13

erred in reducing the square footage of the facility to 10,300 square feet and requiring 40 percent of the structure to be constructed below grade. The city council reasoned that the zoning administrator considered inappropriate factors in deciding to reduce the facility's square footage, such as the size of nearby single-family residences and the size of other Chabad facilities in the San Fernando Valley. The city council found fault with the zoning administrator's failure "to sufficiently consider her own finding that institutional structures and single-family residential homes are not directly comparable." The city council also cited evidence that the facility would not abut any private property in finding the zoning administrator abused her discretion.

The city council further found that the zoning administrator erred in comparing the requested facility to other nearby Chabad facilities without considering "the location of the other facilities, the congregations of the other facilities, or the size and demographics of the areas served by the other Chabad facilities." The city council listed the sizes of the other facilities and noted that the proposed facility was comparable in size to the others. The city council further pointed out that the size of the other facilities was irrelevant to the needs of the proposed facility, stating that the proposed facility "is located within an established Orthodox Jewish neighborhood, which necessarily requires a larger assembly space."

The city council found that the zoning administrator also abused her discretion in requiring that 40 percent of the approved floor area be provided below grade because this requirement would place too great a financial burden on Chabad and was unnecessary to "minimize the impact of massing and scale on nearby neighbors." The city council cited testimony by Chabad's representative that requiring such a large proportion of the requested habitable space to be below

14

grade "would represent too great a cost to allow development of the site." The city council also reasoned that the impact on the neighborhood was ameliorated by limiting the height of the proposed structure to 28 feet and by the "unique location and configuration of the project site."

### 2. *Size of the Assembly Area*

Second, the city council found that the zoning administrator erred in relying on the size of the assembly area to try to restrict future growth of the congregation, rather than limiting the maximum number of people allowed to assemble at the proposed facility. The city council cited the zoning administrator's findings that "characteristics of Chabad's operation would typically not require the number of parking spaces required by code;" ample street parking was available during hours observed by staff; the staff report stated that the congregation usually would not exceed 150-200 people, even though the space could accommodate 338 people; the staff report indicated that there were off-site parking arrangements with Los Angeles Valley College. The city council thus found that a modification of the proposal to allow an assembly area of 3,370 square feet with an occupancy limit of 200 people was warranted. The city council further found that a parking variance, allowing only five parking spaces, was warranted.

### 3. *Setback*

Third, the city council found that the zoning administrator erred in requiring a 10-foot setback along Ethel Avenue. The city council explained that the location was a triangular island bounded by two wide streets and by the Los Angeles County Metropolitan Transportation Authority Orange Busway Line right-of-way, which "is 100 feet wide and buffered by a 12-foot-tall sound wall." Because

15

"[t]hese rights-of-way provide significant spatial buffers from residential uses," the city council found that the zoning administrator abused her discretion to failing to take these into account in requiring a 10-foot buffer. The city council further explained that the residences across Ethel Avenue are separated from the project site by more than 40 to 60 feet, and those across Chandler Boulevard by more than 150 feet. The nearest structures therefore "already have significant spatial buffers and access to light and air." Given the site's unusual configuration and location, as well as the denial of the requested height variance, such that the height of the proposed structure was reduced by nine feet, the city council found that a shallower setback was warranted. The city council thus permitted varying building setbacks from 2 to 11 feet along Ethel Avenue and Chandler Boulevard.

4. *Modifications of the Project*

In order to address the errors it found in the zoning administrator's decision, the city council modified the proposed project by: (1) approving 12,000 square feet of floor area; (2) limiting the height of the proposed structure to 28 feet; (3) requiring construction of 20 percent of the floor area below grade; (4) requiring setbacks ranging from 2 to 11 feet on the Ethel Avenue and Chandler Boulevard frontages; (5) approving a combined worship/assembly space of 3,370 square feet; (6) limiting the maximum permitted assembly to 200 persons; and (7) maintaining the parking variance approved by the zoning administrator to allow five on-site parking spaces rather than the required 96 spaces.

B. *Appellants' Challenges to the City's Findings*

Appellants challenge the City's findings on several bases. First, appellants contend that there is no factual support for the City's finding that the zoning

16

administrator erred in considering the size of nearby residences. True, the facility is in a residential neighborhood and therefore it is not surprising that the zoning administrator considered the size of neighborhood residences in assessing the size of the facility to approve. But in questioning the zoning administrator's restriction, the city council cited the zoning administrator's remark that "any institutional facility . . . is likely to be approved with a greater square footage than a typical home," and found that she had failed to give sufficient consideration to this observation in restricting the size of the proposed facility. The city council's point was that a facility such as the proposed synagogue would typically (and by necessity) be larger than most neighboring residences by some degree, and the zoning administrator failed to give adequate weight to that consideration in restricting the size of the project. The city council further supported its finding that the zoning administrator abused her discretion by relying on the project site's unique location as an "island" bounded on the south by Chandler Boulevard, on the west by Ethel Avenue, and on the north by a right of way of the Los Angeles County Metropolitan Transportation Authority for the Orange Line busway. The city council found it significant that these rights of way provide spatial buffers from residences and that the project site accordingly was not directly adjacent to any private property.

The council's conclusion is not unreasonable. In any event, we may not overturn the city council's criticism of the zoning administrator merely because ""'"a contrary finding would have been equally or more reasonable."'" [Citations.]" [Citation.]' [Citation.]" (*West Chandler I, supra*, 198 Cal.App.4th at p. 1518.)

Second, appellants contend that the zoning administrator correctly relied on the size of other Chabad facilities, pointing out that the zoning administrator carefully analyzed the events at the proposed facility, including factors such as the

17

likely attendance and the ensuing parking and space needs. The City's finding, however, was that in relying on the size of other Chabad facilities, the zoning administrator did not take into consideration the location, congregation size, and demographics of the other facilities. Considering those factors, the City determined that the proposed project was not out of line with other Chabad facilities. It is not unreasonable for the city council to conclude that these factors are important in comparing other facilities to the proposed project, and that the zoning administrator's failure to consider them undercut her comparison between those facilities and the proposed project. Further, the city council reasonably pointed out that the size of the other facilities was irrelevant to the needs of the proposed facility, which "is located within an established Orthodox Jewish neighborhood, which necessarily requires a larger assembly space." The city council concluded that the proposed facility would be "desirable to the public convenience and welfare, the facility's location is proper in relation to adjacent uses, and that the use will not be materially detrimental to the character of the development of the immediate neighborhood."

Next, appellants contend that the city council erred in relying on Chabad's "need" as a consideration in granting the CUP and the variance, citing sections 12.24, subdivision E and 12.27, subdivision D of the Municipal Code. It is true that the need of the applicant is not a requisite finding that must be made before granting a variance or CUP. (See LAMC, §§ 12.24, subd. E, 12.27, subd. D.)[5]

---

[5] Section 12.24, subdivision E of the Municipal Code sets forth the findings that must be made before granting a CUP: "1. that the project will enhance the built environment in the surrounding neighborhood or will perform a function or provide a service that is essential or beneficial to the community, city, or region; [¶] 2. that the project's location, size, height, operations and other significant features will be compatible with and will not adversely affect or further degrade adjacent properties, the surrounding neighborhood, or the public health, welfare, and safety; and [¶] 3. that the

18

However, the Municipal Code does not *preclude* the consideration of the applicant's need in the determination, and we find no legal basis on which to fault the city council for considering it.

Appellants argue that the record belies the City's finding that the zoning administrator's requirement that 40 percent (approximately 4,000 square feet) of the structure be below grade would impose a financial hardship on Chabad. Appellants note that Chabad's counsel stated at the PLUM Committee hearing that 6,000 square feet already had been built below ground.[6] However, that Chabad was ultimately able to comply with the requirement by building 6,000 square feet below ground does not mean that the cost to do so was not a hardship in light of other factors. The City found also that the requirement was unnecessary to

project substantially conforms with the purpose, intent and provisions of the General Plan, the applicable community plan, and any applicable specific plan." (LAMC, § 12.24, subd. E.)

Section 12.27, subdivision D requires the following findings before approving a variance: "1. that the strict application of the provisions of the zoning ordinance would result in practical difficulties or unnecessary hardships inconsistent with the general purposes and intent of the zoning regulations; [¶] 2. that there are special circumstances applicable to the subject property such as size, shape, topography, location or surroundings that do not apply generally to other property in the same zone and vicinity; [¶] 3. that the variance is necessary for the preservation and enjoyment of a substantial property right or use generally possessed by other property in the same zone and vicinity but which, because of the special circumstances and practical difficulties or unnecessary hardships, is denied to the property in question; [¶] 4. that the granting of the variance will not be materially detrimental to the public welfare, or injurious to the property or improvements in the same zone or vicinity in which the property is located; and [¶] 5. that the granting of the variance will not adversely affect any element of the General Plan. [¶] A variance shall not be used to grant a special privilege or to permit a use substantially inconsistent with the limitations upon other properties in the same zone and vicinity. The Zoning Administrator may deny a variance if the conditions creating the need for the variance were self-imposed." (LAMC, § 12.27, subd. D.)

[6]     It appears that the project has been in the midst of construction during these proceedings.

19

"minimize the impact of massing and scale on nearby neighbors," and that the impact on the neighborhood was ameliorated by limiting the height of the proposed structure to 28 feet and by the "unique location and configuration of the project site."

Appellants contend that the facility approved by the zoning administrator was sufficient to accommodate Chabad's needs. Perhaps so, but that is not the standard by which we review the City's decision. As noted above, we may not overturn the city council's finding ""for the reason that it is considered that a contrary finding would have been equally or more reasonable."' [Citations.]" [Citation.]' [Citation.]" (*West Chandler I, supra*, 198 Cal.App.4th at p. 1518.) Similarly, appellants' contention that the zoning administrator "had good reasons to impose a size limitation rather than an occupancy limitation," does not comport with our standard of review. While the zoning administrator may have had good reasons to impose a size limitation, the City found that an occupancy limitation was "[a] more efficient and effective way to control intensification of the use of the project site." Considering the facts in the light most favorable to the city council and resolving all conflicts in its favor (*Hoitt, supra*, 207 Cal.App.4th at p. 522), there is no basis to overturn the city council's finding in that regard.

Finally, appellants take issue with the City's findings regarding the 10-foot setback. They contend that the City's findings presume that the zoning administrator erroneously failed to consider the shape of the site and the streets surrounding it. However, appellants misconstrue the City's finding. The zoning administrator considered factors such as the shape of the site, the surrounding streets, the MTA property, and sight lines affected by the setback. In its review, the City also considered these factors, but came to a different conclusion: that a smaller setback was sufficient. The city council relied on the widths of the streets

bounding the property: Chandler Boulevard is 150 feet wide with a 50-foot-wide center parkway; Ethel Avenue is 40 feet wide north of Chandler Boulevard and 60 feet wide south of Chandler Boulevard; and the Orange Line busway right-of-way is 100 feet wide and buffered by a 12-foot-tall sound wall. The City further reasoned that the setback requirements are "intended to provide adjoining structures with visual relief, light, and air," and that these requirements are already adequately met. The City also found that the zoning administrator abused her discretion by failing to take into consideration the fact that the triangular shape of the project site rendered the narrow portion of the property unusable for building. The City's conclusion that a smaller setback was sufficient is not unreasonable and is within the City's purview to make.

III.   *Requirements of Topanga*

Appellants contend that the City failed under *Topanga* to bridge the analytical gap between the limitations imposed by the zoning administrator and the specifics of its own decision. The contention rests on a misreading of *Topanga* and *West Chandler I.*

*Topanga* requires that "the agency which renders the challenged decision must set forth findings to bridge the analytic gap between the raw evidence and *ultimate* decision or order." (*Topanga*, *supra*, 11 Cal.3d at p. 515, italics added.) *Topanga* does not require the agency to bridge the gap between the initial factfinder's decision and the reviewing agency's decision. Thus, in the prior appeal, we observed that "the city council's CUP findings set forth the details of the project and state that the permit has been granted, with no indication of the reason for the ultimate decision." (*West Chandler I, supra*, 198 Cal.App.4th at p. 1521.) The City merely adopted the proposal with no reference to the evidence

21

discussed by the zoning administrator and no explanation of why it disagreed with the zoning administrator's decision. Because we could not "discern the analytic route the city council traveled from evidence to action," we held that the City failed to follow the requirements of *Topanga*. (*Id.* at p. 1522.)

The City's decision now sets forth its specific reasons for disagreeing with the zoning administrator's decision, which in turn justify its approval of the project as modified. We thus are not presented with "'"'mere conclusory findings without reference to the record . . . . [Citation.]" [Citation.]' [Citation.]" (*West Chandler I, supra*, 198 Cal.App.4th at p. 1521.) Neither *Topanga* nor *West Chandler I* requires the City to justify each specific detail of its decision, such as why it chose a 12,000 square foot building rather than the 10,300 square foot building approved by the zoning administrator, or 3,370 square feet of assembly space rather than 2,400 square feet. Rather, the agency's finding need only be adequate "to enable the parties to determine whether and on what basis they should seek review and, in the event of review, to apprise a reviewing court of the basis for the [agency's] action." (*Topanga*, *supra*, 11 Cal.3d at p. 514.) Moreover, "'"'where reference to the administrative record informs the parties and reviewing courts of the theory upon which an agency has arrived at its ultimate finding and decision[,] it has long been recognized that the decision should be upheld if the agency 'in truth found those facts which as a matter of law are essential to sustain its . . . [decision].'"'" [Citation.]'" (*Great Oaks Water Co. v. Santa Clara Valley Water Dist.* (2009) 170 Cal.App.4th 956, 971.) Here, the City's findings, which refer to the record and delineate the City's reasoning process, are clearly sufficient to apprise the parties and this court on review of the City's theory for approving the project as modified.

Finally, we acknowledge *Topanga*'s admonition that "courts must meaningfully review grants of variances in order to protect the interests of those

22

who hold rights in property nearby the parcel for which a variance is sought. A zoning scheme, after all, is similar in some respects to a contract; each party foregoes rights to use its land as it wishes in return for the assurance that the use of neighboring property will be similarly restricted, the rationale being that such mutual restriction can enhance total community welfare. [Citations.] If the interest of these parties in preventing unjustified variance awards for neighboring land is not sufficiently protected, the consequence will be subversion of the critical reciprocity upon which zoning regulation rests. [¶] . . . Vigorous judicial review thus can serve to mitigate the effects of insufficiently independent decision-making." (*Topanga*, *supra*, 11 Cal.3d at pp. 517-518.)

Nonetheless, we may not overturn the city council's decision simply because a contrary decision would have been equally or more reasonable. (*West Chandler I, supra*, 198 Cal.App.4th at p. 1518.) Rather, in determining whether the agency's findings are supported by substantial evidence and whether these findings support the agency's decision, we "'must resolve reasonable doubts in favor of the administrative findings and decision.'" (*Stolman v. City of Los Angeles* (2003) 114 Cal.App.4th 916, 922.) Because the City addressed the evidence before the zoning administrator and set forth its specific reasons for finding that she abused her discretion, we conclude that the City's findings are supported by substantial evidence and meet the requirements of the Municipal Code and *Topanga.*

IV.  *Consideration of Appellants' New Evidence*

Appellants contend that the city council improperly refused to remand the matter to the zoning administrator for her to consider new evidence. Section 12.27, subdivision K of the Municipal Code allows any aggrieved person to present new evidence on appeal by filing "a statement as to why that evidence

23

could not reasonably have been presented to the Zoning Administrator. If the [city council] determines that the evidence could not reasonably have been presented to the Zoning Administrator and the evidence is of such a nature as might reasonably have led to a different decision by the Zoning Administrator, the [city council] shall remand the matter to the Zoning Administrator."[7] (LAMC, § 12.27, subd. K.)

Here, a remand was inappropriate because the proposed new evidence would not reasonably have led the zoning administrator to a different decision. Indeed, she already had approved a smaller project than that approved by the city council.

Appellants submitted evidence that, after receiving approval from the city council, Chabad began advertising new activities to be held at the facility, including monthly lectures, emergency food and shelter, and street festivals. They also submitted evidence that, in August 2011, Chabad's lease of property owned by the Metropolitan Transportation Authority, which was to be used for an outdoor playground and daily recreation, changed from a three-year lease to a monthly lease that can be revoked at any time. They also submitted evidence that, after the project was approved by the City, Chabad revised its application to include a request to use publicly-owned property adjacent to its property for a children's playground. Chabad also began advertising a rooftop terrace, which had not been mentioned previously. Appellants presented evidence that Chabad had begun violating the approved operation hours of 7 a.m. to 11 p.m., advertising a start time of 6:30 a.m. for some activities and holding events that continued until 1:30 or 2:00 a.m. They presented evidence that Chabad violated construction permit and

---

[7] This section of the Municipal Code addresses an appeal to the Area Planning Commission, but, pursuant to L.A. Charter, section 245, subdivision (e), the city council here "steps into the shoes of the planning commission in reviewing the zoning administrator's decisions regarding the CUP and the variance." (*West Chandler I, supra*, 198 Cal.App.4th at p. 1516.)

safety requirements, as well as the off-site parking requirement, submitting photographs of numerous cars parked on nearby streets during various days of the week.

In addressing this evidence during the PLUM Committee hearing, the original zoning administrator stated that she had reviewed the proposed new evidence, and she concluded that it "really had to do with the scope of the project. And so what I considered was a much larger project and I think what [the evidence] is alluding to is the fact that the project that resulted from City Council was a different project than what I had, but it is within the range of the scope. So, there's nothing in there that would have convinced me to change any decision. I would have probably still . . . proceeded with a smaller scope project."

Thus, the record shows no basis on which to remand the matter to consider the new evidence. The evidence was merely cumulative to the evidence already considered by the zoning administrator in her decision limiting the scope of the project, and was thus was not "of such a nature as might reasonably have led to a different decision by the Zoning Administrator." (LAMC, § 12.27, subd. K.)

**DISPOSITION**

The judgment is affirmed.  The parties are to bear their own costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, J.


We concur:




EPSTEIN, P. J.




MANELLA, J.


26