Filed 7/8/15  Smith v. City of Riverside CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| JOHNNIE SMITH, | |
| Plaintiff and Appellant, | E060886 |
| v. | (Super.Ct.No. RIC1202101) |
| CITY OF RIVERSIDE, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  Craig G. Riemer, Judge.  Affirmed.

Bill S. Vaughan for Plaintiff and Appellant.

Cristina L. Talley, City Attorney, Rahman Gerren, Deputy City Attorney for Defendant and Respondent.

Plaintiff and appellant Johnnie Smith appeals from the denial of his writ of administrative mandamus brought pursuant to Code of Civil Procedure section 1094.5.  In 1970, Smith purchased property located at 6969 Arbor Drive in Riverside (Property).  In 2009, defendant and respondent City of Riverside (City) received an anonymous tip

1

that a garage on the Property had been converted to a dwelling (Garage) and might not be permitted. An inspector came to the Property and observed the Garage. After a review of the permits pertaining to the Property, the City determined the Garage was not permitted. Smith was cited for the violation and a hearing before the City's Community Development Department/Code Enforcement Division was conducted in September 2010. The hearing officer upheld the violation. An administrative civil penalties hearing was conducted in May 2011. Smith was not present. The hearing officer determined the violation found in September 2010 had not been remedied, and fines and fees were imposed.

In February 2012, Smith filed a writ of prohibition. The trial court construed the writ as a writ of administrative mandamus. The trial court denied the writ of mandate.

Smith now contends on appeal as follows: (1) There is insufficient evidence to support the findings of the administrative hearing officers and the trial court; (2) the trial court should have charged the City for its unreasonable delay in contesting the converted dwelling, e.g. laches; and (3) his Fourth Amendment rights were violated when the City inspected the Property without a warrant.

Substantial evidence supports the finding by the administrative hearing officer that the conversion of the Garage was not permitted and was in violation of Riverside Municipal Code section 16.04.510. Further, Smith has not shown laches, and there was no Fourth Amendment violation. We affirm the denial of Smith's writ of mandate.

## FACTUAL AND PROCEDURAL HISTORY

### A.     FINDINGS OF THE ADMINISTRATIVE HEARING OFFICERS

On March 12, 2013, the City filed an administrative record. The City provided a background report prepared by Code Enforcement Officer Todd Solomon. According to a background report, the City's Code Enforcement Division received a citizen complaint that on the Property there were trash cans in public view, too many renters, subjects living in a motor home, and a garage conversion that was not permitted.

Code Enforcement Officer Robert Plum inspected the Property on May 5, 2010. The Property had a 1,101-square-feet dwelling and the Garage was in the back. Officer Plum posted a notice of violation of Riverside Municipal Code section 16.04.510 instructing Smith to obtain building permits for all non-permitted construction or return the Garage to its original condition. Smith did not apply for a new permit for the Garage. An administrative citation was prepared on June 8, 2010, notifying Smith he had to obtain the proper permits for the Garage by July 8, 2010. It notified Smith that he could be responsible for fines up to $1,000 each day the violation continued.

Several permits for the address of 6969 Arbor Drive were included in the administrative record. First, an application in 1954 for the "residence" on the Property to have a septic tank and cesspool. In addition, a building permit granted on June 24, 1963, for a garage extension was included (1963 permit). The 1963 permit stated it was for an addition of 18 feet to be added to the existing garage. There was an inspection on July 8, 1963, of the footings, and on August 1, 1963, of the framing. There was a notation, "Working, ok 8/21/63."

3

Another permit for connection of the Property to the sewer system was included. It was approved on June 5, 1978 (1978 permit). It only listed an address of "6969 Arbor." Another document with the words "R.T. 6-1-78 Thomas" had a drawing that showed two rectangles and a line going to both rectangles.

In addition, photographs of the Property were included that depicted the front dwelling and the Garage.

A hearing was held on September 2, 2010. The hearing has not been made part of the record. According to the hearing order sent to Smith on September 10, 2010, the administrative hearing officer upheld the citation on September 3, 2010. The hearing officer found as follows: "Officer Plum testified and presented evidence in the form of photos and other documents establishing the existence of a code violation for failure to have required building permits for a garage conversion to living space on this parcel. The sole question presented was whether or not the violation existed on June 8, 2010, the day of the citation. Photographs depicted that rather than a garage door, there was a regular door, windows where a garage door would have been based on the aerial photo of the parcel. There was no concrete driveway in this 1950's home, but that was not unusual. Permits shown by City staff indicated that a previous septic tank hookup was changed to a regular sewer hookup in 1976 for the primary residence. Appellant Smith offered building permits records, ostensibly to support his claim that the garage conversion that was done legally in 1964. However, the permits seemed to indicate otherwise, stating it was an 'an addition of 18 ft. to a private garage.' It did not state it was to change the nature of the garage to a living quarters. Mr. Smith acknowledged it was indeed a living

4

space in the garage; however his contention that an 'addition' would only be built for living quarters was not persuasive. Further, he claimed that he purchased the property in the present condition. However, that does not absolve the city code violation." Included in the administrative record was a letter from Smith to the City dated June 18, 2010, advising the City he was appealing and that he had submitted three building permits.

On November 10, 2010, the Property was again inspected. The dwelling and Garage were vacant. On November 18, 2010, Officer Solomon found the Garage vacant with an open rear door and window. Officer Solomon called for an exigent board-up on the Garage. Officer Solomon issued an administrative citation assessing a fee of $200. Smith again was advised to obtain a permit for the Garage conversion. On December 7, 2010, no permit for the Garage had been pulled and Officer Solomon issued another citation for a fee of $500, warning Smith he must get a permit for the Garage conversion.

On January 10, 2011, Officer Solomon issued another citation for the Garage conversion and fee totaling $500. On February 17, 2011, an administrative civil penalties notice and order was sent to Smith. He was advised he must correct the violations on the Property by March 19, 2011, and that he was subject to fees and fines. The fees would commence on March 19, 2011, if he did not correct the violations.

On March 23, 2011, Smith sent an indecipherable legal notice and demand to the City citing the Uniform Commercial Code. The City advised Smith that it did not protect him and that the hearing order issued on September 3, 2010, remained in effect. A notice of hearing for May 5, 2011, was sent to Smith.

According to the summary of evidence from the May 5, 2011, hearing, Officer Solomon presented documents and photographs, along with testimony, depicting code violations on the Property, including the illegal conversion of the Garage.[1] Despite numerous notices of violations, Smith did not correct the illegal conversion of the Garage. The hearing officer noted, "No owner or party of interest was present at this properly and timely noticed Administrative Hearing." The administrative hearing officer found, "Based on the records, photographs and information submitted by City staff, it was established the following City code violation continues to exist on this residential property: RMC Section 16.04.510 (Lack of Required Building Permits for Construction/Garage Conversion). Therefore, the City has met their burden of proof and established the existence of the above City code violation in support of this request for civil penalties and related costs. This property constitutes a 'Public Nuisance' as defined in the relevant City statutes." The hearing officer awarded all civil penalties and administrative costs to the City due to Smith's failure to remedy the violation. A fine of $100 each day commencing on March 11, 2011, until the violation was corrected, was imposed. The City was awarded $1,991.56 in administrative costs.

On February 25, 2013, Smith filed in propria persona a second amended writ of prohibition in the Riverside County Superior Court, which is essentially indecipherable. Prior to the hearing on his writ of prohibition, Smith filed an affidavit and objections to the administrative record. Many of the objections were incomprehensible.

---

[1] A transcript of the hearing was not made part of the administrative record.

B.     FIRST HEARING IN THE TRIAL COURT

On September 20, 2013, the writ of prohibition was heard. Smith had since retained counsel, Bill Vaughan. The trial court clarified it could only review the evidence to determine whether the hearing officer abused his discretion in finding the violation. The trial court stated that if Smith were not represented by counsel, the writ of prohibition would have been dismissed based on it being incomprehensible.

Vaughan was ordered to provide additional briefing. Vaughan was to make any objections to the administrative record and augment the record as needed. Vaughan was also advised to cite to the precise legal issues and factual issues that must be decided by the trial court.

The City was ordered to file a supplemental brief addressing whether the City's inspections of the Property violated the Fourth Amendment. The trial on the writ of prohibition was continued.

C.     NEW BRIEFING

On December 19, 2013, Vaughan made a request for judicial notice of a grant deed recorded on June 30, 1970, for the Property. The deed showed that Smith purchased the property on that date.

Vaughan presented new briefing. Smith sought to revoke and dismiss all civil penalties, citations and costs associated with the Property. Smith sought a writ to direct the City to refrain from any further harassment. Smith also sought payment of his attorney fees.

Vaughan alleged that when Smith purchased the Property, the Garage was a separate dwelling unit. Relying on the 1963 permit, Vaughan argued that the prior owner obtained a permit from the City to remodel, enlarge and convert the Garage into a dwelling. The City signed off on the renovation by stating "Working, ok." The 1963 permit showed the conversion was approved. After buying the property, Smith applied for a permit to allow him to connect the Garage to the public sewage system. Smith had a vested property right in that he relied on the permits.

Relying only on the "Affidavit of Smith" from the writ of prohibition and photographs in the administrative record, Vaughan insisted that the City had invaded the Property without a warrant. This violated Smith's Fourth Amendment rights. All of the violations and fees were as a result of this illegal entry.

Vaughan also argued that the City's actions were barred by the doctrine of laches. Smith was prejudiced by the City's delay in enforcing the violation. Vaughan also alleged that the administrative record supported that a garage was not required in the County of Riverside between the years of 1963 to 1978. Vaughan requested damages and attorney's fees. Vaughan attached exhibits that were already in the administrative record.

The City filed a supplemental brief addressing the Fourth Amendment issue. The City alleged that the code violation was called in by a citizen. The code enforcement officer observed the violation from the sidewalk and Smith's driveway, both of which were open to the public. There was no Fourth Amendment violation.

The City also filed a response to the additional briefing filed by Vaughan. The City argued that Smith had failed to timely appeal the administrative hearing order and that a writ of prohibition did not provide the relief sought by Smith. The City argued that judicial review of the administrative hearing order was governed by Code of Civil Procedure section 1094.6 and provided that a writ of mandate shall be filed within 90 days of the issuance of the final order. Even if the trial court allowed Smith to amend to a writ of mandate, it would be barred by the statute of limitations.

Vaughan filed a reply to the City's supplemental arguments. Vaughan noted that the photographs of the Garage and the Property showed that they had entered the Property. Further, all City and county ordinances allowing entry did not preempt the Fourth Amendment. Vaughan also filed a reply addressing the statute of limitations. Vaughan argued that the City had waived the argument by failing to raise it earlier.

D.    RULING

A hearing was held on January 31, 2014. Initially, the trial court noted that based on Smith's brief, Smith was raising two issues. One, the administrative hearing orders that were issued were invalid because they relied upon evidence that was obtained in violation of the Fourth Amendment; and two, the hearing officer abused his discretion by ignoring the evidence of the prior permits. Smith was objecting to the administrative hearing orders from both the 2010 and 2011 hearings. In addition, Vaughan asked the trial court to consider the writ of prohibition as a writ of mandate.

9

The trial court first addressed the timeliness argument raised for the first time by the City. The trial court rejected the City's timeliness argument on the ground that Smith was not properly notified of the time constraints.

The trial court then addressed the merits. The trial court first noted that Smith was directed to object to any improper evidence presented in the City's administrative record or to augment the record with any necessary documents. Smith had done neither. Further, Vaughan had only cited in the brief to Smith's affidavit, which was not part of the administrative record.

As to the Fourth Amendment issue, the trial court noted that the inspection was as a result of a citizen complaint. The trial court asked Vaughan what evidence proved that the Garage could not be observed from the street. Smith referred to photographs taken inside the Garage. The City argued that the inspector could go to the driveway of the Property and observe the Garage and there was a limited expectation of privacy in a driveway. The City argued that the first inspection only involved walking up the driveway. The entry onto the property did not occur until November 18, 2010, when it was found vacant.

The trial court found the violation that was upheld on September 3, 2010, was prior to the City's entry onto the Property. Smith argued that there was an "inspection" of the Property on April 28, 2010. The trial court agreed that there was some type of inspection on April 28, 2010, but that did not mean the inspectors entered the Property. The word "inspected" did not mean entry. The trial court stated, "[a]nd the September 3rd order, it seems to me, is the crucial factual determination that led to all of the

10

consequences that Mr. Smith is complaining about. That, basically, is the judgment here. Everything else that happened were efforts to enforce that judgment." The trial court did not find a Fourth Amendment violation.

The trial court then addressed the permits that appeared in the administrative record. The trial court questioned how the City would be aware of the unpermitted Garage from the sewage application for the address of 6969 Arbor. Smith argued that the extension of the line to the Garage in the application put the City on notice of the Garage.

The trial court then addressed the 1963 permit and believed it only approved an 18-foot expansion of the existing garage. Smith admitted that no evidence in the record contained the term "conversion." The trial court stated, "I'm not seeing how these—how those documents are so clearly for approval of conversion of the garage into residential area as opposed to an expansion of the garage, that the administrative hearing officer was [ab]using his discretion by construing these as simply being an expansion."

The trial court then addressed laches for the City's failure to bring this enforcement. Again, the trial court denied the claim finding the violation was ongoing.

The trial court ruled, "The point of view here is that you've got to show me that the administrative hearing officer abused his discretion or otherwise proceeded contrary to law. And I don't see it. I don't see . . . that a constitutional violation has been proven with respect to the fundamental judgment here which is the administrative hearing order . . . dated September 3rd 2010. I don't think that you've demonstrated to me that the hearing officer who conducted that hearing and reached that decision abused his

11

discretion and otherwise acted contrary to law and I don't think the laches argument works. So the court is going to deny the petition for writ of mandate."

## DISCUSSION

### A. STANDARD OF REVIEW

Neither party provides an appropriate statement of the standard of review in this case. In *West Chandler Boulevard. Neighborhood Association v. City of Los Angeles* (2011) 198 Cal.App.4th 1506, the court provided a succinct recitation of the standard of review as follows: "'Section 1094.5 makes administrative mandamus available for review of "any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken and discretion in the determination of facts is vested in the inferior tribunal, corporation, board or officer."'" [Citation.] '[I]mplicit in section 1094.5 is a requirement that the agency which renders the challenged decision must set forth findings to bridge the analytic gap between the raw evidence and ultimate decision or order.' [Citation.] [¶] In reviewing an agency's decision under . . . section 1094.5, the trial court determines whether (1) the agency proceeded without, or in excess of, jurisdiction; (2) there was a fair hearing;[2] and (3) the agency abused its discretion. [Citation.]' [Citation.] 'Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence.' [Citation.] 'The trial court and appellate court apply the

---

[2] Riverside Municipal Code section 1.17.140 provides for a hearing.

12

same standard; the trial court's determination is not binding on us.'" (*Id*. at pp. 1517-1518, fn. omitted; see also *Carson Harbor Village, Ltd. v. City of Carson Mobilehome Park Rental Review Bd.* (1999) 70 Cal.App.4th 281, 287 [we review the administrative record to determine whether the agency findings were supported by substantial evidence]; *Galante Vineyards v. Monterey Peninsula Water Management Dist.* (1997) 60 Cal.App.4th 1109, 1117 (*Galante Vineyards*) [appellate court reviews for substantial evidence when trial court also performed substantial evidence review].)

"'"In applying the substantial evidence standard, 'the reviewing court must resolve reasonable doubts in favor of the administrative findings and decision.'"'" (*Galante Vineyards*, *supra*, 60 Cal.App.4th at p. 1117.)

B.    SUBSTANTIAL EVIDENCE

Smith argues that despite the 1963 permit not containing the word "conversion," substantial evidence established that the conversion of the Garage was approved by the City in 1963. In addition, the Garage was inspected and approved by the City to connect to the sewer line in 1976 and 1978. As such, the evidence does not support that he committed a violation of the Riverside Municipal Code. Further, the City could not revoke the existing permits even if new regulations required a garage. Finally, Smith had a vested property right because he purchased the Property in reliance on the permitted Garage conversion. The substance of these arguments is that the 1963 permit resulted in the conversion of the Garage to a dwelling and it was permitted. We conclude substantial evidence supports the administrative order finding the violation. As such, the order imposing the fees and fines was supported by substantial evidence.

13

Riverside Municipal Code section 16.04.510 provides: "It is unlawful for any person to erect, construct, enlarge, alter, repair, move, use, occupy or maintain any building, structure, equipment, or portion thereof in the City or cause the same to be done contrary to or in violation of any provision of this Title or any provisions of the building code, building code standards, housing code, mechanical code, dangerous buildings abatement code, fire code and fire code standards (hereinafter referred to as the 'adopted codes'), as such codes have been adopted in this Title or as they may be duly amended, or any other applicable law or ordinance. (Ord. 6844 § 24, 2006; Ord. 6262 § 20, 1996; Ord. 5551 § 10, 1987; Ord. 5259 § 16, 1985; Ord. 4853 § 45, 1980; Ord. 4192 § 1, 1975; Ord. 3495 § 1 (part), 1968; prior code § 9.110)"[3]

Here, the evidence established that the conversion of the Garage was completed without the proper permits. The 1963 permit on its face allows for an expansion of the garage by 18 feet. The 1963 permit provides that the building was used as a "private garage." The 1963 permit did not authorize removal of the garage door. The 1963 permit cannot be construed to convert the Garage to a dwelling. There is no evidence in the administrative record that the Garage had its own address or was ever considered to be a dwelling by the City.

Smith contends that the trial court erroneously focused on what was not in the administrative record or on the 1963 permit. However, Smith was directed to object to the administrative record or augment the record if he believed it was incomplete. Smith

---

[3] Riverside Municipal Code <http://www.riversideca.gov/municode/pdf/16/title-16.pdf> (as of July 6, 2015).

14

chose not to challenge the administrative record and cannot now complain about the state of the evidence.

Smith additionally claims that the City approved of the conversion of the Garage when it inspected and approved the connection of the Garage to the public sewage system in 1978. However, the evidence does not support such a conclusion. The permit to connect lists only the address of 6969 Arbor. The attached drawing does not establish that the inspector observed the converted Garage and ignored it. We cannot simply speculate as to what occurred in 1978. It is equally plausible that the conversion of the Garage had not been completed at that time but was actually converted after the sewage system was approved. Smith is the only party who claimed the conversion occurred prior to his purchase of the Property; this is not evidence that can be considered. Smith may in fact have obtained the sewer line in anticipation of converting the Garage. There is no evidence in the record to support the City approved of the Garage conversion.

Smith makes two other arguments. He contends there was no requirement in Riverside County for a garage between the years of 1963 to 1978. However, this ignores the fact that there was no permit obtained to convert the Garage to a dwelling.

Finally, Smith argues he had a vested property right in reliance on the permits. He insists he would not have purchased the Property if he knew the Garage was not permitted. "It has long been the rule in this state and in other jurisdictions that if a property owner has performed substantial work and incurred substantial liabilities in good faith reliance upon a permit issued by the government, he acquires a vested right to complete construction in accordance with the terms of the permit. [Citations.] Once a

15

landowner has secured a vested right the government may not, by virtue of a change in the zoning laws, prohibit construction authorized by the permit upon which he relied." (*Avco Community Developers, Inc. v. South Coast Regional Com.* (1976) 17 Cal.3d 785, 791.)

Again, this argument presumes that the 1963 and 1978 permits could be relied upon to allow conversion of the Garage to a dwelling. No person could reasonably rely upon the permits to find that the converted Garage was approved by the City. Further, nothing in the administrative record establishes when the Garage conversion occurred. Smith cannot rely on his own affidavit to show that when he purchased the Property, the Garage had been converted. Smith cannot establish, based on the evidence in the administrative record, that he had a vested right in the Garage conversion.

Based on the foregoing, substantial evidence supported that Smith violated Riverside Municipal Code section 16.04.510. As such, the evidence supported the administrative order issued on September 3, 2010, finding the violation and the May 5, 2011, order imposing fees and fines based on Smith's failure to remedy the violation.

C.     LACHES

Smith contends that the trial court erred by failing to apply laches. He insists that the City was aware of the converted Garage since 1963 and did nothing for 50 years to enforce the code violation. In addition, for the first time, Smith argues that he was entitled to variance relief.

16

"'Laches is an equitable defense. It consists of a failure on the part of a plaintiff to assert his rights in a timely fashion accompanied by a period of delay with consequent results prejudicial to the defendant.' [Citation.] 'Delay is not a bar unless it works to the disadvantage or prejudice of other parties.'" (*Cedars-Sinai Medical Center v. Shewry* (2006) 137 Cal.App.4th 964, 985.)

Initially, Smith's argument presumes that the Garage was already converted in 1963. However, as previously stated, the 1963 permit only authorized an addition to the existing garage. Nothing in the record provides when the conversion actually took place. Only Smith's self-serving affidavit that the Garage was converted when he purchased the Property in 1970 provides a possible date of the conversion. It is impossible, based on the administrative record, to which Smith did not object, to determine how long the Garage had been in violation of the code, and therefore, there is insufficient evidence that the City delayed in asserting their right to enforce the code violation. As noted by the City, it did not have notice until the citizen complaint.

Further, Smith has not shown prejudice. Smith essentially had an unpermitted garage that he used as a dwelling for some period of time.

Finally, although not addressed by the City, Smith's additional argument that he was entitled to a variance is not well taken. A variance to a zoning ordinance can be granted if it would create "unnecessary hardship." (*Walnut Acres Neighborhood Association v. City of Los Angeles* (2015) 235 Cal.App.4th 1303, 1305.) Smith never raised this issue in the administrative hearing or before the trial court. He cannot raise

17

this claim for the first time in this appeal. (See *Bardis v. Oates* (2004) 119 Cal.App.4th 1, 13, fn. 6.)

D.    FOURTH AMENDMENT

Smith contends that the trial court erred by rejecting his argument that all of the entries onto the Property violated this Fourth Amendment rights. As such, his writ of mandate should have been granted because the violation, and the fees and fines, were all based on this illegal entry.[4]

"The Fourth Amendment provides that, 'The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.' The basic purpose of this Amendment, as recognized in countless decisions of this Court, is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." (*Camara v. Municipal Court of City and County of San Francisco* (1967) 387 U.S. 523, 528.) In *Camara*, a case involving the entry onto private property to determine if it complied with the building code, the United States Supreme Court held, "Thus, as a practical matter and in light of the Fourth Amendment's requirement that a warrant specify the property to be searched, it seems likely that warrants should normally be sought only after entry is refused unless there has

---

[4] We note that the City's response to the argument is woefully inadequate. The City makes a new claim of waiver without citation to any authority. The City conclusively argues that the Property was vacant and had to be boarded up.

18

been a citizen complaint or there is other satisfactory reason for securing immediate entry." (*Id*. at pp. 539-540.)

This case provides some support for Smith's argument that a warrant was required to enter his Property for inspections. However, we need not decide whether a warrant was required because the City did not argue below, and has not argued on appeal, that the Fourth Amendment did not apply to the entry onto the Property. The City argued below that the initial inspection, which supported the administrative hearing order on September 3, 2010, involved the inspector standing in the driveway and outside the Property. The Garage, and as a result, the violation, was in plain view. The trial court agreed that there was no evidence of entry to support the original administrative hearing order. We agree.

Smith relies on the photographs in the administrative record to support his claim that the violation was discovered by entry onto the Property. In the record, only a few of the photographs were taken prior to the September 3, 2010, hearing on the violation. In photographs dated May 5, 2010, there are pictures of the Garage that are clearly taken from outside of a fence. The remaining photographs before November 2010 were of the notice posted on the dwelling. According to the background report, Officer Plum inspected the Property on April 28, 2010, posted a notice on May 5, 2010, and inspected the Property on June 7, 2010.

The evidence supports that the violations on the Property were observed without entry onto the Property. As such, the decision by the administrative hearing officer on September 3, 2010, did not involve inadmissible evidence in violation of the Fourth

Amendment. The code violation was not a result of evidence obtained in violation of Smith's Fourth Amendment rights.

Smith contends that the inspector had to open the fence in the backyard in order to view the Garage.[5] However, the photographs that include a chain link fence can clearly be interpreted to show that the inspector was not on the Property.

Finally, Smith contends that even if the original administrative order was not based on an illegal entry, all subsequent entries onto the Property that supported the fines and fees imposed on May 5, 2011, was invalid. However, once the violation was first observed and found to be valid, entry onto the Property was not required to confirm the violation continued. In fact, there was no dispute that Smith refused to return the Garage back to its original state. As such, since the violation was found to be true at the September 3, 2010, hearing, and there is no doubt that the violation continued, the administrative hearing officer did not have to rely on the subsequent searches in imposing the fees and fines.

---

[5] Smith states, "for a better view of these premises go to Google Earth on the internet." This evidence was clearly not part of the administrative record.

## DISPOSITION

The judgment is affirmed.  The City is awarded its costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

HOLLENHORST
Acting P. J.

KING
J.